In re **MERRILL LYNCH TRUST COMPANY FSB, Merrill Lynch Life Insurance Company, and Henry Medina, Relators.**

No. 04–0865.

Supreme Court of Texas.

Argued March 23, 2005.

Decided Aug. 24, 2007.

---

Charles A. Gall, Joel Randall Sharp, Hunton & Williams LLP, Robert B. Gilbreath, Hawkins, Parnell & Thackston, LLP, Jeffrey L. Crouch, Melinda Morrell Hough, Jenkens & Gilchrist, P.C., Dallas, Jorge C. Rangel, Jon D. Brooks, The Rangel Law Firm, P.C., Corpus Christi, for Merrill Lynch Trust Company FSB, Merrill Lynch Life Insurance Company and Henry Medina.

J.A. (Tony) Canales, Hector Antonio Canales, Nancy M. Simonson, Canales & Simonson, P.C., Corpus Christi, for Juan Alaniz.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice GREEN, and Justice WILLETT joined, and in which Justice HECHT and Justice MEDINA joined as to Parts I, III–A, and IV, Justice O'NEILL joined as to Parts I, III, and IV, and Justice WAINWRIGHT and Justice JOHNSON joined as to Parts I, II, and IV.

In considering referral to arbitration, the question is not which forum is quicker, cheaper, or more convenient, but which one the parties picked.[1] Here, the plaintiffs agreed to arbitrate with Merrill Lynch, but not the employee or affiliates they have sued. Because their claims against the employee are in substance claims against Merrill Lynch, we hold those claims must be arbitrated. Because there is no contract theory that ties the affiliates to the same agreement, we hold those claims do not. And to the extent these separate proceedings overlap, we hold the litigation must be stayed until the arbitration is completed.

---

1. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

## I. Background

Juan Alaniz was severely injured in a refinery explosion. He and his wife filed suit and recovered a settlement of more than $2 million. To preserve this recovery, they engaged Merrill Lynch, Pierce, Fenner & Smith Inc. through its employee Henry Medina to provide financial and investment services. In September 1993, the Alanizes opened a series of cash and investment accounts with Merrill Lynch. For each account, the Alanizes agreed to arbitrate any disputes that might arise with Merrill Lynch:

> I agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

As a part of their financial plan, the Alanizes set up an irrevocable life insurance trust with Merrill Lynch Trust Company as trustee, which then purchased a variable life policy from Merrill Lynch Life Insurance Company. Both of these Merrill Lynch affiliates had their own contracts with the Alanizes, neither of which contained an arbitration clause. The Alanizes transferred more than $200,000 from their Merrill Lynch accounts to ML Trust to pay premiums to ML Life. ML Life paid a commission on the sale to Merrill Lynch, which then paid Medina, a licensed agent for ML Life and other insurers.

In April 2003, the Alanizes sued ML Trust, ML Life, and Medina—but not Merrill Lynch—alleging a dozen multifarious claims, all related to the insurance trust, and all asserted against the defendants collectively without differentiating the actions of each. The defendants moved to stay the litigation and compel arbitration, which the trial court denied. The Thirteenth Court of Appeals denied mandamus relief.[2]

The parties agree that the Federal Arbitration Act applies.[3] Accordingly, mandamus relief is appropriate if the trial court abused its discretion in failing to stay the litigation and compel arbitration.[4]

## II. Arbitration with Corporate Employees: Henry Medina

■ The claims against Merrill Lynch's employee, Henry Medina, must go to arbitration for two reasons.

■ First, "parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity."[5] Corporations can act only through human agents, and many business-related torts can be brought against either a corporation or its employees.[6] If a plaintiff's choice between suing

2. 159 S.W.3d 162, 165.

3. *See* 9 U.S.C. §§ 1–16.

4. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005).

5. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1318 (11th Cir.2002) (internal quotations omitted); *accord, Pritzker v. Merrill Lynch, Inc.*, 7 F.3d 1110, 1121 (3d Cir.1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762–63 (Tex.2006).

6. *See, e.g., Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex.2002) (noting "Texas' longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts"); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex.1998) (holding both insurer and its employees may be liable for

the corporation or suing the employees determines whether an arbitration agreement is binding, then such agreements have been rendered illusory on one side.[7] As we recently noted, this would not place arbitration agreements on equal footing with other contracts:

When contracting parties agree to arbitrate all disputes "under or with respect to" a contract (as they did here), they generally intend to include disputes about their agents' actions because "[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract.[8]

Second, the substance of the plaintiffs' suit here is against Merrill Lynch, even though it has not been named as a party.

While the plaintiffs allege they are suing Medina only for his actions while wearing "the hat of the insurance agent," brokers do not change employers every time they sell someone else's product. The commission on this insurance transaction was paid directly to Merrill Lynch, not Medina; if the latter was acting as an agent for ML Life or ML Trust, then so was the former. As there is no question Medina was acting in the course and scope of his employment, if he is liable for the torts alleged against him, then Merrill Lynch is too.[9]

While the plaintiffs have not sued Merrill Lynch yet, they have not "disavowed" such claims (as Justice Hecht asserts). They have never so stipulated under oath or in their pleadings, and their appellate brief says only that *the defendants* have not shown that Merrill Lynch has any potential liability, thus carefully leaving the door open for *the plaintiffs* to pursue precisely that option.[10] Nor do the plaintiffs' trial court pleadings "focus solely" on the insurance sale (again per Justice Hecht); to the contrary, they focus entire-

Insurance Code violations); *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985) (holding both corporation and its individual agents may be liable under DTPA); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (holding both corporation and its agents may be liable for defamation).

7. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 782 (Tex.2006); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex.2002).

8. *In re Vesta*, 192 S.W.3d at 762 (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995) (citation omitted)).

9. *See Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002) ("The general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the

object for which the employee was hired."); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex.1999) ("Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment. This is true even though the employee's tort is intentional when the act, although not specifically authorized by the employer, is closely connected with the servant's authorized duties.") (citations omitted).

10. *See, e.g., Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993) (per curiam) (holding plaintiff did not abandon gender discrimination claim by testifying at her deposition that she did not believe she had been fired because of her gender). Accordingly, such a statement is neither a judicial admission ("a formal waiver of proof usually found in pleadings or the stipulations of the parties"), nor even a quasi-admission ("[a] party's testimonial declaration[ ]" that is evidentiary but "not conclusive"). *Id.*

ly on the alleged misrepresentations, omissions, and fiduciary breaches leading up to it. While only ML Trust might be liable for the transaction itself, Medina and his employer would both be liable for the preliminary tort and statutory claims the plaintiffs have actually alleged.[11]

Finally, the plaintiffs also assert their arbitration agreements were illusory as Merrill Lynch could modify or rescind those agreements at any time. As this defense relates to the parties' entire contract rather than the arbitration clause alone, it is a question for the arbitrators.[12] Additionally, the plaintiffs' testimony that they failed to read the arbitration provisions until this dispute arose is not a valid ground for setting aside their signed agreements.[13]

■ We do not hold today that employees can always invoke an employer's arbitration agreement. When actions outside the course of employment cannot be attributed to an employer, the latter would have no need to invoke its arbitration protections.[14] But under both Texas and federal law, arbitrability turns on the substance of a claim, not artful pleading.[15] Because the plaintiffs' claims against Medina are in substance claims against Merrill Lynch, they must abide by their agreement to arbitrate those claims.[16]

---

**11.** *See, e.g., Liberty Mut. Ins. Co.,* 966 S.W.2d at 486 (holding both insurer and its employees may be liable for Insurance Code violations); *Weitzel,* 691 S.W.2d at 601 (holding both corporation and its individual agents may be liable under DTPA); *see also* TEX. REV. CIV. STAT. art. 581–33, §§ A(2), F(1) (holding one who offers securities and those who directly or indirectly control them liable for securities fraud).

**12.** *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("We reaffirm today that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001).

**13.** *See In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 608 (Tex.2005); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996) ("'Gonzalez' failure to read the agreement does not excuse him from arbitration. We presume a party, like Gonzalez, who has the opportunity to read an arbitration agreement and signs it, knows its contents.").

**14.** *See, e.g., McCarthy v. Azure,* 22 F.3d 351, 362–63 (1st Cir.1994) (refusing to allow nonsignatory owner acting in his own interest from invoking arbitration clause signed by his wholly owned corporation).

**15.** *See Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 626–28 (4th Cir.2006); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.,* 141 F.3d 243, 250 (5th Cir.1998); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757–58 (11th Cir.1993); *Bonny v. Soc'y of Lloyd's,* 3 F.3d 156, 162 (7th Cir.1993); *Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1188 n. 4 (9th Cir.1986); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 131–32 (Tex. 2005).

**16.** We disagree with the plaintiffs' alternative argument that if New York law applies, this result would be any different. *Compare Hirschfeld Prods. v. Mirvish,* 218 A.D.2d 567, 630 N.Y.S.2d 726, 728 (1995) ("The attempt to distinguish officers and directors from the corporation they represent for the purposes of evading an arbitration provision is contrary to the established policy of this State. . . . If it were otherwise, it would be too easy to circumvent the agreement by naming individuals as defendants instead of the entity Agents themselves.") (quotations and citations omitted), *with In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 762 (Tex.2006) ("When contracting parties agree to arbitrate all disputes . . . they generally intend to include disputes about their agents' actions because 'as a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.' If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal

### III. Arbitration with Affiliates: ML Life and ML Trust

#### A. The Agreements

■ Merrill Lynch's cash management agreements referred to some affiliates and third parties, but not ML Trust or ML Life. Those affiliates signed their own contracts with the plaintiffs, which had no arbitration clauses. As allowing these affiliates to compel arbitration would effectively rewrite their contracts, we hold they cannot.

■ "A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." [17] Unlike a corporation and its employees, corporate affiliates are generally created to separate the businesses, liabilities, and contracts of each. Thus, a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates. [18]

Of course, if two corporations are actually operated as one, many courts recognize an alter-ego exception that will bind one to the arbitration agreements of the other. [19]

footing with all other parts of a corporate contract.") (citation omitted).

17. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir.2005).

18. *See, e.g., S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex.2003) (holding franchise tax agreement inapplicable to corporate affiliate under single-business-enterprise theory); *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 341 (Tex.1968) (holding corporation not liable for affiliate's debts).

19. *See, e.g., Am. Bankers*, 453 F.3d at 627 n. 3; *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir.2006); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.2006).

20. *See Bridas*, 447 F.3d at 415; *Comer*, 436 F.3d at 1101; *Zurich Am.*, 417 F.3d at 687; *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 71 (2d Cir.2005); *Trippe Mfg. Co. v. Niles*

But there are no such allegations here, and the exception itself illustrates that arbitration agreements generally do not apply to all corporate affiliates. Thus, we hold ML Trust and ML Life are not covered by the plaintiffs' arbitration agreements with Merrill Lynch.

#### B. Concerted–Misconduct Equitable Estoppel

■ ML Life and ML Trust also assert that they can invoke Merrill Lynch's arbitration agreements through an estoppel theory based on substantially interdependent and concerted misconduct.

Estoppel is one of five or six instances in which the federal circuit courts require arbitration with nonsignatories. [20] We too have applied estoppel when nonsignatories seek a direct benefit from a contract with an arbitration clause. [21] But we have never compelled arbitration based solely on substantially interdependent and concerted misconduct, [22] and for several reasons we decline to do so here.

*Audio Corp.*, 401 F.3d 529, 532 (3d Cir.2005); *InterGen N.V. v. Grina*, 344 F.3d 134, 145–46 (1st Cir.2003); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir.2003); *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir.2000); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex.2005).

21. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex.2005); *Kellogg*, 166 S.W.3d at 741.

22. We noted allegations of concerted misconduct in *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 306–07 (Tex.2006), but compelled arbitration because the plaintiff's claims depended on the underlying agreement, and thus were governed by principles of direct-benefits estoppel.

First, the United States Supreme Court has never construed the Federal Arbitration Act to go this far. It has repeatedly emphasized that arbitration "is a matter of consent, not coercion,"[23] that the Act "does not require parties to arbitrate when they have not agreed to do so,"[24] and its purpose is to make arbitration agreements "as enforceable as other contracts, but not more so."[25] Thus, arbitration is not required merely because two claims arise from the same transaction, as the Court made clear in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*[26] In that case, a hospital sued a contractor (with whom it had an arbitration agreement) and an architect (with whom it did not) alleging the two had improperly agreed to waive the deadline for claiming extra construction costs without the hospital's consent. Despite these allegations of substantially interdependent and joint misconduct, the court held that the nonsignatory architect could not be forced into arbitration:

> The Hospital points out that it has two substantive disputes here—one with Mercury, concerning Mercury's claim for delay and impact costs, and the other with the Architect, concerning the Hospital's claim for indemnity for any liability it may have to Mercury. The latter dispute cannot be sent to arbitration without the Architect's consent, since there is no arbitration agreement between the Hospital and the Architect.[27]

Recognizing the "misfortune" inherent in resolving these related issues in two different places, the Court nevertheless held that considerations of efficiency and convenience cannot override either a signatory's arbitration agreement or a nonsignatory's right to a jury trial:

> It is true, therefore, that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement. If the dispute between Mercury and the Hospital is arbitrable under the Act, then the Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation.[28]

While the Fifth Circuit has recognized concerted-misconduct estoppel, the theory is far from well-settled in the federal courts. Despite hundreds of federal appeals involving arbitration,[29] it appears in

**23.** *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

**24.** *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (quoting *Volt,* 489 U.S. at 478, 109 S.Ct. 1248).

**25.** *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

**26.** 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

**27.** *Id.* at 19–20, 103 S.Ct. 927.

**28.** *Id.* at 20, 103 S.Ct. 927 (emphasis in original).

**29.** "The federal courts of appeal are currently publishing more than one hundred cases per year substantially dealing with arbitration." Frank Z. LaForge, Note, *Inequitable Estoppel: Arbitrating with Nonsignatory Defendants Under Grigson v. Creative Artists,* 84 Tex L. Rev. 225, 225 (2005).

only 10 reported opinions. In the two leading cases, *Grigson v. Creative Artists Agency L.L.C.*[30] and *MS Dealer Service Corp. v. Franklin,*[31] the Fifth and Eleventh Circuits held that *both* direct-benefits *and* concerted-misconduct estoppel were present, so it is unclear what the latter theory added to the result.[32] Of the remainder, the theory was found inapplicable in 4,[33] and it was not reached in 2 more.[34] In only 2 cases did the result hinge on the exception—and in those the Fifth Circuit compelled arbitration in one *and refused to do so in the other.*[35]

In the latter case, *Hill v. G E Power Systems, Inc.*, the Fifth Circuit found that "*Grigson's* second prong is met" (direct-benefits being the first estoppel prong and concerted-misconduct the second), and at the same time that "the district court did not abuse its discretion" in refusing to compel arbitration because "the district court is better equipped to make the call than this court, and we do not lightly override that discretion."[36] But the right to a jury trial is not discretionary. Nor is the right to have an arbitration contract enforced. If the parties have not agreed to arbitration, no trial court has discretion to make them go; if they have agreed to arbitration, no trial court has discretion to let one wriggle out.[37] This Court has already rejected the argument that equitable estoppel allows trial judges to send cases to arbitration or litigation depending on which they think would be fair.[38]

It is true that other federal circuit courts have estopped signatory plaintiffs from avoiding arbitration with nonsignatories using an "intertwined-claims" test. For example, the Second Circuit has compelled arbitration when a nonsignatory defendant has a "close relationship" with one of the signatories and the claims are "inti-

**30.** 210 F.3d 524, 528–31 (5th Cir.2000).

**31.** 177 F.3d 942, 947 (11th Cir.1999).

**32.** Though the *Grigson* court stated that equitable estoppel "is much more readily applicable when the case presents both independent bases," 210 F.3d at 527, if the two bases are independent and each alone is sufficient, it is hard to see why either is made "more applicable" by having both. *See also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir.2002) ("The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.").

**33.** *See Brantley v. Republic Mortgage Ins. Co.,* 424 F.3d 392, 396 (4th Cir.2005); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 360–61 (5th Cir.2003); *Westmoreland v. Sadoux,* 299 F.3d 462, 467 (5th Cir.2002); *Humana,* 285 F.3d at 976.

**34.** *See Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 627 n. 3 (4th Cir.2006); *Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 706

(5th Cir.2002) (noting that exception was applied by district court but that appeal addressed other issues).

**35.** *See Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 399 (5th Cir.2006) (compelling arbitration); *Hill v. G E Power Sys., Inc.,* 282 F.3d 343, 349 (5th Cir.2002) (refusing to compel arbitration).

**36.** *Hill,* 282 F.3d at 349.

**37.** *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citation omitted) (noting that Federal Arbitration Act was specifically enacted to overcome "judicial hostility to arbitration agreements").

**38.** *See Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 308 (Tex.2006) ("WMCO also argues that the trial court had discretion not to apply equitable estoppel, even if it could be applied in the same circumstances. We disagree. A trial court has no 'discretion' in determining what the law is or applying the law to the facts.") (internal quotations omitted).

mately founded in and intertwined with the underlying contract obligations."[39] But the "close relationship" requirement has generally limited this exception to instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings.[40] As discussed above with reference to employees, allowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly. By contrast, the concerted-misconduct test has no "close relationship" component, and would sweep independent entities and even complete strangers into arbitration agreements.[41]

 Similarly, while Texas law has long recognized that nonparties may be bound to a contract under traditional contract rules like agency or alter ego,[42] there has never been such a rule for concerted misconduct. Conspiracy is a tort, not a rule of contract law.[43] And while conspirators consent to accomplish an unlawful act,[44] that does not mean they impliedly consent to each other's arbitration agreements. As other contracts do not become binding on nonparties due to concerted misconduct, allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose.[45]

**39.** *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir.1995) (internal citations omitted); *accord, Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005); *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 177 (2d Cir.2004); *Astra Oil Co., v. Rover Navigation, Ltd.*, 344 F.3d 276, 279 (2d Cir.2003); *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir.2001); *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97–98 (2d Cir.1999).

**40.** *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir.2005) (allowing nonsignatory owners of signatory franchisor to invoke its arbitration clause); *JLM Indus.*, 387 F.3d at 177 (allowing nonsignatory owners of subsidiary to invoke its arbitration clauses); *Astra*, 344 F.3d at 279 (allowing nonsignatory affiliate that acted as agent for signatory corporation to invoke its arbitration clause); *Smith/Enron*, 198 F.3d at 97–98 (allowing nonsignatory affiliates and assignors of signatory corporations to invoke their arbitration clauses); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) (allowing nonsignatory parent to invoke subsidiary's arbitration clause); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988) (same); *see also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir.2001) ("In essence, a non-signatory voluntarily pierces its own

veil to arbitrate claims against a signatory that are derivative of its corporate-subsidiary's claims against the same signatory."); *cf. Choctaw Generation*, 271 F.3d at 406 (allowing nonsignatory surety to invoke debtor's arbitration clause); *but see Denney*, 412 F.3d at 70 (allowing unaffiliated nonsignatories to invoke arbitration by estoppel); *McCarthy v. Azure*, 22 F.3d 351, 362–63 (1st Cir.1994) (refusing to allow nonsignatory owner of signatory corporation to invoke its arbitration clause).

**41.** *Cf. In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex.2006) ("We agree with Cashion that he would not be required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause.").

**42.** *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex.2005).

**43.** *See Tilton v. Marshall*, 925 S.W.2d 672, 680–81 (Tex.1996).

**44.** *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995).

**45.** *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex.2005).

Until the United States Supreme Court clarifies whether concerted-misconduct estoppel correctly reflects federal law, or even whether federal or state law governs the issue,[46] today's decision must remain somewhat tentative. But we find nothing in Texas contract law, and no settled principles of federal arbitration law, that would require the plaintiffs to arbitrate with Merrill Lynch's affiliates.

## IV. Stay of Litigation Pending Arbitration

■ In addition to moving to compel arbitration, ML Trust and ML Life moved to stay the plaintiffs' litigation against them. Assuming the same issues must be decided both in arbitration (against Medina) and in court (against the affiliates), we hold the latter must be stayed until the former is completed.

Trial judges cannot deny a party its day in court, but they have always had wide discretion to say when that day will be. Both the Federal and Texas Arbitration Acts require courts to stay litigation of issues that are subject to arbitration.[47] Without such a stay, arbitration would no longer be the "rapid, inexpensive alternative to traditional litigation"[48] it was intended to be, so long as one could find a trial judge willing to let the litigation proceed for awhile. The Federal Arbitration Act was passed precisely to overcome such judicial hostility.[49]

■ Thus, when an issue is pending in both arbitration and litigation, the Federal Arbitration Act generally requires the arbitration to go forward first; arbitration "should be given priority to the extent it is likely to resolve issues material to this lawsuit."[50] This has been the practice in all the federal courts.[51] As Judge Posner has noted:

> [There] are cases in which a party to an arbitration agreement, trying to get around it, sues not only the other party to the agreement but some related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration. Such a maneuver should not be allowed to succeed ... [and] would require the court to stay the proceedings before it and let the arbitration go forward unimpeded.[52]

We encountered the problem in different circumstances in *In re Kellogg Brown & Root, Inc.*, in which a nonsignatory's litigation of a lien claim was abated while arbitrators decided who owned the equipment

46. *See Weekley*, 180 S.W.3d at 130; *Kellogg*, 166 S.W.3d at 738–39.

47. 9 U.S.C. § 3; Tex. Civ. Prac. & Rem.Code §§ 171.025, 172.174.

48. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex.1992).

49. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

50. *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir.2001).

51. *See, e.g., Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir.

2007); *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir.2004); *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir.2002); *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir.2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir.1996); *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir.1976).

52. *IDS Life Ins. Co.*, 103 F.3d at 530.

to which the lien claim attached.[53] Once arbitration was completed, we held the litigation could proceed.[54] The case illustrates one of many circumstances in which litigation must be abated to ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation. In this case, if the alleged misrepresentations and omissions by Medina must be arbitrated, that proceeding must be given priority so that it is not rendered moot by deciding the same issues in court. After the arbitration is completed, the plaintiffs' claims against ML Trust and ML Life can then be litigated (to the extent they survive) without infringing the arbitration agreement. In the interim, a stay of litigation ensures that the Alanizes do not "both have [their] contract and defeat it too." [55]

* * *

Accordingly, we hold the trial court abused its discretion in failing to compel arbitration of the plaintiffs' claims against Henry Medina, and in failing to stay their litigation against ML Trust and ML Life until that arbitration was concluded. We conditionally grant the writ of mandamus and order the trial court to vacate its order and enter a new order in accordance with this opinion. We are confident the trial court will comply, and our writ will issue only if it does not.

Justice HECHT filed an opinion concurring in part and dissenting in part, in which Justice MEDINA joined, and in Part I of which Justice O'NEILL joined.

Justice JOHNSON filed an opinion concurring in part and dissenting in part, in which Justice WAINWRIGHT joined.

Justice HECHT, joined by Justice MEDINA, and joined by Justice O'NEILL as to Part I, concurring in part and dissenting in part.

By agreeing to arbitrate all controversies with their broker, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Juan and Norma Alaniz also agreed to arbitrate claims against Merrill Lynch employees, including Henry Medina, for which Merrill Lynch could be liable because of the employment relationship. But Merrill Lynch cannot be held vicariously liable for Medina's actions, as it might ordinarily be, because the Alanizes have affirmatively disclaimed such liability. And the record does not establish whether Merrill Lynch would be obliged to indemnify Medina for any liability he might have to the Alanizes. Even if his actions as a financial analyst were generally within the course and scope of employment, it is not clear whether the same can be said for his recommendation of a transaction illegal under Texas law. The record provides no other basis for holding Merrill Lynch liable for Medina's actions or for the actions of its affiliates, Merrill Lynch Trust Co., FSB ("ML Trust") and Merrill Lynch Life Insurance Co. ("ML Life"), or for estopping the Alanizes from refusing to arbitrate their claims against those two companies. Accordingly, I would hold that the lower courts correctly refused to compel arbitration of any of the Alanizes' claims.[1]

I agree that if some of the Alanizes' claims must be arbitrated and some litigat-

**53.** 166 S.W.3d 732 (Tex.2005).

**54.** *Id.* at 742.

**55.** *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 135 (Tex.2005).

**1.** 159 S.W.3d 162 (Tex.App.-Corpus Christi 2004).

ed, litigation must be stayed pending the outcome of the arbitration. Thus, I concur only in Parts I, III–A, and IV of the Court's opinion.

I

For estate planning purposes, the Alanizes created an irrevocable trust, designating their descendants as beneficiaries and ML Trust as trustee, to purchase and hold a $5 million insurance policy on their lives. ML Trust bought the policy from ML Life with funds from the Alanizes' Merrill Lynch accounts. Nine years later, the Alanizes sued ML Trust and ML Life for self-dealing. The two companies concede that because they are affiliated,[2] the purchase of the policy was illegal under Texas law,[3] although they contend that they did not recognize the illegality at the time and that, in any event, the Alanizes benefitted from the transaction.

The Alanizes never agreed to arbitrate disputes with ML Trust and ML Life, but they did agree to arbitrate "all controversies" that might arise with Merrill Lynch.[4] Their financial advisor, Medina, a Merrill Lynch employee, recommended the cre-ation of the trust and the purchase of the ML Life policy. As a licensed insurance agent, Medina sold the policy to the trust and received compensation in addition to his Merrill Lynch salary. The Alanizes named Medina as a defendant in their suit against ML Trust and ML Life, but they did not name Merrill Lynch.

The Alanizes could not evade their arbitration agreement with Merrill Lynch simply by suing its employee, Medina, who was not a party to the agreement. An agreement to arbitrate disputes with someone necessarily includes claims against his agents if he can be held liable for those claims because of the agency relationship. The Court explained one reason for this rule last Term in *In re Vesta Insurance Group, Inc.*[5] A person cannot avoid his obligations merely because they must be discharged by an agent. For example, a company that has contracted to sell six widgets cannot renege on that contract because its shipping clerk, who would actually see that those widgets are sent to the buyer, did not also sign the contract. To allow a person to avoid an agreement to arbitrate disputes

---

**2.** Merrill Lynch & Co., The Merrill Lynch 2004 Factbook 12–13 (2005), http://www.ml.com/media/47195.pdf (last visited Aug. 22, 2007) ·(available in Clerk of Court's case file) (excerpting information from public filings and stating that Merrill Lynch Life Insurance Co. is a subsidiary of Merrill Lynch Insurance Group, Inc., which, along with Merrill Lynch Trust Co., FSB, are subsidiaries of Merrill Lynch Group, Inc., which, along with Merrill Lynch, Pierce, Fenner & Smith Inc., are subsidiaries of Merrill Lynch & Co., Inc.).

**3.** Tex. Prop Code § 113.053(a)(1) (stating that with certain exceptions, "a trustee shall not directly or indirectly buy or sell trust property from or to ... the trustee or an affiliate"); *id.* § 111.004(1)(A) (defining "affiliate" for purposes of the Texas Trust Code as "a person who directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with another person").

**4.** The Alanizes' Cash Management Account Agreements with Merrill Lynch provided: "I agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration." The agreements further specified that " 'I,' 'me,' 'my' or 'accountholder' means each person who signs the CMA Application and Agreement form or the CMA SubAccount Application and Agreement form. 'You,' 'your' or 'MLPF & S' means Merrill Lynch, Pierce, Fenner & Smith Incorporated...."

**5.** 192 S.W.3d 759 (Tex.2006) (per curiam).

with someone by suing only the agents whose actions gave rise to the dispute but who did not sign the agreement would be to give arbitration agreements less effect than other agreements.[6]

Another reason for the rule is that a party should not be permitted to eviscerate his agreement to arbitrate disputes with a principal by establishing liability against the agent. As the Court explains, a principal's liability for his agent's action taken in the furtherance of the principal's business does not preclude action against the agent individually.[7] But establishing the agent's liability may be tantamount to establishing liability against the principal if the agent acted in the course and scope of his authority and the principal provided his defense. Further even if the claimant did not attempt to use a judgment against the agent to recover against the principal, the agent himself might be entitled to have the principal indemnify him for his liability.[8] In either situation, a party could effectively resolve the dispute that he had agreed to arbitrate with the principal by litigating with the agent.

So the Alanizes are bound to arbitrate with Medina any claims they have against Merrill Lynch. For example, they could allege that Medina was negligent or misleading in giving them financial advice. These claims would be arbitrable even if asserted against Medina only because they involve his conduct as a Merrill Lynch employee. But the Alanizes have tried very hard not to assert any such claims. Their original petition begins by complaining of Medina "in his capacity as an agent of Merrill Lynch Trust Company and Merrill Lynch Life Insurance Company", not as a Merrill Lynch employee. The petition alleges that ML Trust "as trustee used the trust funds to illegally engage in self-dealing by purchasing a life insurance policy from its own affiliate [ML Life] through its agent Henry Medina." Parts of the petition can be read in isolation to assert claims against Medina beyond his actions on behalf of ML Life and ML Trust. For example, the petition alleges generally that "Defendants", Medina included, breached their fiduciary duties, were negligent, and made negligent misrepresentations. But the Alanizes tell this Court that their "chief complaint" against Medina is "in his capacity as a licensed insurance agent for Life Insurance Company and sale of the insurance policy at

---

6. *Id.* at 762 ("When contracting parties agree to arbitrate all disputes 'under or with respect to' a contract (as they did here), they generally intend to include disputes about their agents' actions because '[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.' If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract." (citations omitted)).

7. *Ante* at 189 n. 7 (citing authorities).

8. *See Oats v. Dublin Nat'l Bank*, 127 Tex. 2, 90 S.W.2d 824, 829 (1936) (stating that "an agent, who in the performance of his duties for his principal incurs liability for an act not morally wrong, may have indemnity from the principal"); *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex.1988) (stating that this rule does not apply in negligence cases governed by the comparative responsibility statute); *see also Godwin v. Jessell*, No. 05–99–01824–CV, 2001 WL 111558, at *3, 2001 Tex. App. LEXIS 883, at *4–9 (Tex.App.-Dallas 2001, no pet.) (concluding that while "there is little case law defining the term 'morally wrong' acts," knowing dishonesty, misrepresentation, and deceit were, as a matter of law, among them).

issue." [9] Their "chief allegation", they say, is that ML Trust and ML Life engaged in self-dealing.[10] They contend that "Medina's actions as a licensed insurance agent in the sale of a life insurance policy in Texas are irrelevant and unconnected to [Merrill Lynch and the CMA agreements]." [11] Merrill Lynch, they say, "is not a defendant in the lawsuit simply because it neither acted as trustee nor insurance salesman and thus cannot be legally responsible for the damages caused to [plaintiffs] for violations of the Texas Trust Code or Insurance Code." [12] Merrill Lynch, they continue, "has no potential liability for any of the claims in this case and [plaintiffs have] not alleged [that Merrill Lynch] engaged in any act or omission in connection with the trust or insurance policy" that is the basis of the suit.[13] The Alanizes' counsel told the trial court that if they sued Merrill Lynch on the claims they had asserted against ML Trust, ML Life, and Medina, it would be entitled to summary judgment. The reason the parent company "set up these three affiliated companies and made them distinct entities", he argued, is "[b]ecause they do distinctly different things". "[T]here's no evidence," he stated, "that my clients are attempting to hold [Merrill Lynch] liable for the acts of the trust company, the life insurance company, or Medina."

Whether one *can* serve two masters,[14] the law allows it and generally makes both employers liable for the agent's actions.[15] But nothing requires a third party injured by the agent to hold both employers responsible. Ordinarily, the claimant has every reason to do so, if not simply to assure full recovery, then to keep each employer from escaping liability by blaming the other. But the Alanizes face another consideration. ML Trust and ML Life have conceded that they violated Texas law in the purchase and sale of the life insurance policy. Merrill Lynch, on the other hand, does not admit that it is liable to the Alanizes for that reason or any other. The Alanizes must still prove that ML Trust's and ML Life's actions caused damages, which defendants adamantly deny, but the Alanizes may consider that an easier burden than taking on Merrill Lynch. Regardless of their motivation, nothing prevents them from complaining of Medina's actions on behalf of ML Trust and ML Life while disclaiming any complaint about his action on behalf of Merrill Lynch. That is what the Alanizes have done. It is not merely artful pleading, as relators complain. The Alanizes have disclaimed liability by Merrill Lynch.

Because allegations in the Alanizes' petition can be read to assert claims other than self-dealing by ML Trust and ML Life, and the Alanizes have not stipulated under oath or in their pleadings that they assert no other claims, the Court concludes

9. Responsive Brief of the Real Parties in Interest at 11.

10. *Id.* at 11.

11. *Id.* at 34.

12. *Id.* at 18.

13. *Id.* at 53.

14. *Matthew* 6:24 ("'No one can serve two masters. Either he will hate the one and love the other, or he will be devoted to the one and despise the other. You cannot serve both God and Money.'").

15. *See* RESTATEMENT (SECOND) OF AGENCY § 226 (1958) ("A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other."), *cited in Garza v. Excel Logistics, Inc.*, 100 S.W.3d 280, 284 (Tex.App.-Houston [1st Dist.] 2002), *rev'd on other grounds*, 161 S.W.3d 473 (Tex.2005); RESTATEMENT (THIRD) OF AGENCY § 7.03, reporters' note d(2).

that the Alanizes' claims against Medina "are in substance claims against Merrill Lynch".[16] But I would not ignore the efforts to limit their complaints that the Alanizes *have* made. The Court views their disclaimer as ineffective because it is not iron-clad, and worries that the Alanizes could still pursue imposing liability on Merrill Lynch down the road. But any claim they make against Merrill Lynch must be arbitrated. Should the Alanizes prevail in this action, their recovery would not bind Merrill Lynch because it is not a party.

The Alanizes' arbitration agreement might nevertheless be circumvented if Merrill Lynch were obligated to indemnify Medina, because he is an employee, or ML Trust and ML Life, because they are affiliates, and a judgment against them were binding on Merrill Lynch. But nothing in the record suggests that Merrill Lynch has any obligation to indemnify its affiliates, and it is unclear whether it would be required to indemnify Medina, or whether his recommendation of an illegal transaction, despite his claimed innocence, is the sort of conduct for which he is not due indemnification.[17] Also, while the Court states that "[t]here is no question Medina was acting in the course and scope of his employment",[18] the only evidence comes from Medina and the Alanizes, who have every reason to think he was. Merrill Lynch has not been heard on the subject. For all we know, Merrill Lynch had a policy against recommending transactions like this one. The right to arbitration must be proved, not merely assumed.

It bears repeating that a party cannot avoid his agreement to arbitrate by suing the other party's employees instead of the employee himself. But that is not the case here. If Medina had acted only as a financial analyst employed by Merrill Lynch and not as a licensed agent selling insurance, the Alanizes would have no basis for a claim against him distinct from a claim against Merrill Lynch. But he played a separate role, for which he was separately compensated, and I would hold that the Alanizes, disavowing all claims against Merrill Lynch, can sue him separately in that role, as well as ML Trust and ML Life.

## II

Estoppel sometimes requires a person to arbitrate even though he has not agreed to do so, as this Court observed just six months ago in *Meyer v. WMCO–GP, LLC*.[19] When, exactly, has been hard to define. Several years ago, the Eleventh Circuit stated:

> application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.[20]

---

16. *Ante* at 190.

17. *Supra* note 8.

18. *Ante* at 189.

19. 211 S.W.3d 302, 305 (Tex.2006) ("As a rule, arbitration of a claim cannot be compelled unless it falls within the scope of a valid arbitration agreement. But sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." (footnotes omitted)).

20. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (citations, ellipses, brackets, and quotation marks omitted).

The Fifth Circuit endorsed this view in *Grigson v. Creative Artists Agency*,[21] and we referred to it as "substantially correct" in *Meyer*.[22]

The Court criticizes estoppel based on "substantially interdependent and concerted misconduct" because the theory "is far from well-settled in the federal courts."[23] The Court seems to think that the federal courts may be right in finding estoppel when arbitrable and nonarbitrable claims are "intertwined" as long as there is a "close relationship" component,[24] but the Court asserts that *Grigson* does not have that component. It is not at all clear to me that *Grigson's* second prong is much different from the rule for intertwined claims applied in other cases that the Court accepts, but the issue need not be decided here. The Alanizes' claims against ML Trust and ML Life, as I have described them above, focus solely on the illegality of the inter-affiliate purchase and sale of the life policy. These claims are not intertwined with any claims that the Alanizes' might have against Merrill Lynch (which they have disavowed); they are not "substantially interdependent," do not have a "close relationship", and do not allege "concerted misconduct". No estoppel theory prohibits the Alanizes from refusing to arbitrate the claims it has asserted in the circumstances of this case.

\* \* \*

The Alanizes are not required to arbitrate their claims. I would accordingly deny mandamus relief.

Justice JOHNSON, joined by Justice WAINWRIGHT, concurring in part and dissenting in part.

As the Court notes, arbitration is a matter of consent and the Federal Arbitration Act generally does not require parties to arbitrate when they have not agreed to do so. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). But parties should be required to arbitrate disputes which, according to law, they have agreed to arbitrate. Our decisions relating to arbitration should facilitate prompt, final resolution of those disputes to the extent reasonably possible. To that end, I agree that the trial court abused its discretion in failing to require Juan and Norma Alaniz to arbitrate their claims against Henry Medina. While I agree that arbitration must be based on an agreement to arbitrate by the parties and no such agreement exists or can be relied on by ML Trust and ML Life, I do not consider that we write on a clean slate with these facts and this issue.

In this case to which the FAA applies, I would follow the stated position of the Federal Fifth Circuit Court of Appeals that equitable estoppel is applicable in cases where a signatory to a contract containing an arbitration clause alleges substantially interdependent and concerted misconduct by both a nonsignatory and one or more of the signatories to the contract. On that basis, I would hold that the trial court abused its discretion in failing to apply the second prong of *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000), to equitably estop the Alanizes from refusing to arbitrate claims against ML Trust and ML Life to the extent the claims are based on Medina's alleged misconduct. I would grant relief accordingly.

The Alanizes' petition alleges that, in early 1994, Medina, as agent for ML Life

---

**21.** 210 F.3d 524, 527 (5th Cir.2000).

**22.** *Meyer*, 211 S.W.3d at 306–308.

**23.** *Ante* at 192.

**24.** *Ante* at 193–94.

and ML Trust, approached them regarding the creation of an irrevocable trust. The petition then alleges that the wrongful actions of "Defendants" improperly induced the Alanizes to create an irrevocable trust and name ML Trust as trustee, which in turn allowed self-dealing among "Defendants" by ML Trust purchasing life insurance from ML Life with Medina acting as agent. The petition further alleges that "Defendants" violated various provisions of the Property Code, Insurance Code, and Business and Commerce Code; committed breaches of fiduciary duties, fraudulent conversion, theft, negligent misrepresentation, and negligence generally; and were unjustly enriched from the payments made by the Alanizes to ML Trust. Specifically, for example, the Alanizes allege:

12. ... Defendants, including Mr. Medina in his capacity as an agent of Merrill Lynch Trust Company and Merrill Lynch Life Insurance Company, represented to Plaintiffs that Defendants were sophisticated, skilled and experienced in the areas of trusts and life insurance. Defendants also represented to Plaintiffs that they would act in a manner consistent with Plaintiffs [sic] best interests....

13. In April, 1994 Defendants arranged for an attorney to draft the Alaniz Irrevocable Trust Agreement at Plaintiffs [sic] expense. Defendants exerted inappropriate and undue influence over the drafting....

14. Defendants knowingly made false and misleading statements of material facts and law to Plaintiff ...

15. Defendants' actions were done with reckless and intentional disregard of the rights and well being of Plaintiffs ... [and] to unjustly enrich Defendants....

....

20. Plaintiff [will show] that the acts, errors, and omissions of Defendants have amounted to the following ...

21. ... [T]he acts, errors, and omissions of Defendants have been a producing/proximate cause of Juan Alaniz' and Norma Alaniz' damages....

The gravamen of the pleaded complaints against ML Trust and ML Life is that the companies acted both through Medina's actions as the companies' agent and in concert with Medina and each other to induce the Alanizes to transfer funds to ML Trust, and that ML Trust then paid life insurance premiums to its affiliate ML Life and paid fees to all defendants.

Several months before the Alanizes even considered purchasing life insurance and setting up an irrevocable life insurance trust they began dealing with Medina as a financial advisor who worked for Merrill Lynch. The scope of the arbitration provision the Alanizes signed when they first began dealing with Medina is broad. It encompasses "all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof." As the Court holds, the pleadings and evidence, together with the scope of the arbitration clause, compel the conclusion that, as to Medina, the Alanizes must arbitrate the claims on which they sued. 235 S.W.3d 185; *see In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 762–63 (Tex.2006). As the Court also holds, ML Trust and ML Life are not entitled to enforce the arbitration agreement as "affiliates" of Merrill Lynch. But ML Trust and ML Life further urge that the Alanizes should be compelled to arbitrate on the basis of equitable estoppel. This is so, they claim, for two reasons. First, the Alanizes' claims refer to or pre-

sume the existence of the Merrill Lynch CMA agreement containing the arbitration clause. Second, the Alanizes' claims raise allegations of substantially interdependent and concerted misconduct by ML Trust, ML Life, and Medina. *See Grigson,* 210 F.3d at 527 ("First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.... Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." (emphasis omitted)).

We have previously noted that when the FAA applies there is some question as to whether federal law or state law applies to the issue of whether a party to a lawsuit may be compelled to arbitrate its claims. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738–39 (Tex.2005). We cited *Washington Mutual Finance Group, LLC v. Bailey,* 364 F.3d 260, 267–68 (5th Cir. 2004), in acknowledging the Fifth Circuit's position that federal law generally applies. *In re Kellogg Brown & Root,* 166 S.W.3d at 738–39. The Fifth Circuit explained that "because the determination of whether a non-signatory is bound by an arbitration provision 'presents no state law question of contract formation or validity,' a court should 'look to the federal substantive law of arbitrability to resolve this question.'" *Bailey,* 364 F.3d at 268 n. 6 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 417 n. 4 (4th Cir.2000)). Nevertheless, we concluded that state law may also

play a role in the decision, and we applied "state law . . . informed by persuasive and well-reasoned federal precedent." *In re Kellogg Brown & Root,* 166 S.W.3d at 739. Subsequently, we noted the importance of maintaining uniformity of state and federal law on this issue, stating that "[w]e remain mindful of the importance of keeping federal and state law uniform so that arbitrability does not depend on where one seeks to compel it." *In re Vesta,* 192 S.W.3d at 763.

Equitable estoppel cannot force parties such as the Alanizes to arbitrate if they have not agreed to do so in the first instance. *See Bridas S.A.P.I.C. v. Gov't of Turkm.,* 345 F.3d 347, 360–61 (5th Cir. 2003) (noting that equitable estoppel could not be used to compel a nonsignatory to arbitrate and distinguishing *Grigson* by noting that in *Grigson* the court "estopped a *signatory* plaintiff from relying upon the *defendants'* status as a nonsignatory to prevent the defendants from compelling arbitration under the agreement. We justified applying equitable estoppel in *Grigson* in part because to do otherwise would permit the signatory plaintiff to 'have it both ways.'"). Thus, equitable estoppel does not, by itself, create an agreement to arbitrate. But here, the Alanizes agreed to arbitrate—the question is with whom and what.

The Alanizes' claims do not fall under the first *Grigson* equitable estoppel prong. The claims do not refer to or presume the existence of the CMA agreement containing the arbitration clause. But I would hold that because we are dealing with the FAA, under *Grigson's* second prong the Alanizes are equitably estopped from asserting the lack of an agreement to arbitrate with ML Life and ML Trust as to those claims which depend on actions or omissions of Medina for which the Alanizes are also suing Medina. The Alanizes'

agreement to arbitrate encompasses those disputes.

In determining whether an outside party may assert equitable estoppel as a basis for joining arbitration proceedings, the Fifth Circuit has held that " '[t]he lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.' " *Hill v. G E Power Sys., Inc.,* 282 F.3d 343, 349 (5th Cir.2002) (quoting *Grigson,* 210 F.3d at 527). Reviewing the various ways that proceedings could develop in this case, it seems that equity mandates allowing ML Trust and ML Life to participate in the arbitration. Speculating about future developments in lawsuits and legal theories parties might advance is generally not very productive. But at the risk of being nonproductive, one can envision how, if the claims against ML Trust and ML Life which are based on claims the Court holds the Alanizes must arbitrate with Medina are not referred to arbitration, then the possibility, if not probability, exists that Medina is going to be a significant part of the litigation whenever the Alanizes' suit against ML Trust and ML Life is prosecuted. One reason for this comes to mind immediately. If Medina prevails in the arbitration, the Alanizes could press an argument in the lawsuit that even though the arbitration might preclude Medina's personal liability to the Alanizes, his actions are imputable to ML Trust and ML Life because he acted as their agent and they should be held responsible for his actions. If that or some similar (or dissimilar) argument is entertained by the trial court, Medina is sure to be deposed, subpoenaed to testify at trial, etc.

On the other hand, and again without trying to speculate as to all the arguments counsel might develop, one can envision how, if the Alanizes prevail on their claims

against Medina in arbitration, ML Trust and ML Life would argue that the arbitration proceedings do not bind them and that they remain entitled to fully litigate any issue involving Medina's allegedly improper actions or omissions before the actions or omissions can be imputed to them. The net result is that Medina ends up deeply enmeshed in the litigation process no matter what happens in arbitration.

The above scenarios do not take into account various other problems presented by requiring the Alanizes to arbitrate only against Medina. For example, what happens if, after Medina and the Alanizes arbitrate, ML Trust and ML Life attempt to sue or hold Medina as a party to the lawsuit to recover damages they must pay the Alanizes resulting from Medina's actions as their agent? If they are for some reason barred or restricted from claiming against Medina because of arbitration proceedings, ML Trust and ML Life will almost assuredly claim that their rights have been impaired by the arbitration in which they were not allowed to participate. But if the trial court allows Medina to be brought into and kept in the lawsuit by ML Trust and ML Life, Medina loses the benefit of having arbitrated his disputes with the Alanizes.

One solution to all of this is the second prong of *Grigson's* equitable estoppel construct. *Grigson,* 210 F.3d at 527. The Alanizes should be equitably estopped from asserting they have no arbitration agreement with ML Trust and ML Life to the extent the Alanizes claim ML Trust and ML Life are liable because of Medina's misconduct. Their claims that Medina wronged them are disputes the Alanizes, under the law, agreed to arbitrate. The claims against ML Trust and ML Life that rely on Medina's alleged misconduct depend on "substantially interdependent and concerted misconduct" by Medina, ML

Trust and ML Life because they are based on the same allegations of misconduct. *See Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 398–99 (5th Cir.2006); *Grigson,* 210 F.3d at 527. There is little, if any, inequity to the Alanizes if ML Trust and ML Life are included in the arbitration to the extent noted above. The facts and claims in arbitration would remain the same and would pose little, if any, increased burden on the Alanizes. The Alanizes are in control of their own fate: they arbitrate only facts and matters underlying the misconduct which they allege both against Medina and as a basis for the companies' liability to them.

In *Brown,* the Fifth Circuit affirmed the trial court's determination that the Browns, signatories to an arbitration agreement, were equitably estopped under *Grigson's* second prong from asserting that lack of an arbitration agreement precluded their being required to arbitrate with a nonsignatory to the agreement. *Brown,* 462 F.3d at 398–99. In doing so, the court did not question the validity of *Grigson's* second prong as a basis for applying equitable estoppel to require arbitration. To the contrary, the court noted that "[t]his circuit does not stand alone in approving the use of equitable estoppel against a non-party to an arbitration agreement" and cited cases from the Fourth, Seventh, Eighth, and Eleventh federal circuits. *Id.* at 398 n. 9.

In *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 305 (Tex.2006), a case brought under the Texas General Arbitration Act[1] as opposed to the FAA, the trial court refused to compel arbitration between a signatory and a nonsignatory. The court of appeals affirmed. In holding that the trial court abused its discretion in refusing to compel arbitration, we discussed the two *Grigson* prongs for applying equitable

estoppel. *Id.* at 305–06. Our decision that the signatory, WMCO, was equitably estopped from refusing to arbitrate its claims against the nonsignatories was bottomed on *Grigson's* first prong. *Id.* at 306. However, we also addressed, without questioning its validity, the second prong of *Grigson* in refuting the court of appeals' conclusion that WMCO's claims against the nonsignatories were not intertwined with its claims against the signatory:

> Finally, the court [of appeals] concluded that WMCO's claims against Meyer and Ford were not intertwined with claims against Bullock. This is simply wrong. WMCO's claims against Meyer and Ford are not only intertwined with its claims against Bullock, they have the same tap root: WMCO's assertion that Ford lost its right of first refusal.

*Id.* at 307. The one dissenting justice did not argue that the second *Grigson* prong was not a valid basis under the TAA for equitably estopping a signatory from refusing to arbitrate with a nonsignatory, but disagreed that either prong was satisfied. *Id.* at 308 (O'Neill, J., dissenting). Thus less than a year ago we at least implied both prongs of *Grigson's* equitable estoppel construct apply even in cases subject to the TAA. Just as the claims in *Meyer* had "the same tap root," to the extent the Alanizes' claims against Medina, ML Trust, and ML Life in this case are based on Medina's alleged misconduct, they have the same root system: Medina's actions.

The two-pronged equitable estoppel framework set out in *Grigson* and referenced recently in *Brown* is the Fifth Circuit's position on equitable estoppel and arbitration pursuant to the FAA. I would conform our decisions to that position in FAA cases until either the Fifth Circuit or

---

**1.** *See* Tex. Civ. Prac. & Rem.Code §§ 171.001–.098.

the United States Supreme Court rejects the construct.

We have held that "[m]andamus is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal, as when a party is erroneously denied its contracted-for arbitration rights under the FAA." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006). It is within the trial court's discretion whether to apply equitable estoppel in cases like this. *See Brown*, 462 F.3d at 398; *Grigson*, 210 F.3d at 528. But a trial court "has no 'discretion' in determining what the law is or applying the law to the facts." *Meyer*, 211 S.W.3d at 308 (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)). On this record I would hold that any discretion in compelling arbitration of the Alanizes' claims against ML Trust and ML Life is foreclosed as to claims based on Medina's actions. Those claims are not just arguably substantially interdependent and concerted. They are the same claims based on the same facts: Medina's actions. If those claims are tried by the Alanizes and the companies, as opposed to being arbitrated with Medina, Medina can hardly avoid being a key part of the trial. If he is, one aspect of the federal policy favoring arbitration of claims within the scope of a valid arbitration agreement will be frustrated: disputes based on Medina's actions will not be quickly and efficiently resolved. The claims in all probability will be arbitrated and then tried in the lawsuit to a significant degree.

I join parts I and II of the Court's opinion. I dissent from the Court's refusal to direct the trial court to order the Alanizes' claims against ML Trust and ML Life to arbitration to the extent the claims against the companies are based on Medina's alleged misconduct. As to claims against ML Trust and ML Life not based on Medina's actions, I agree that the trial

court did not abuse its discretion in failing to order arbitration. If mandamus relief were granted to ML Trust and ML Life as well as to Medina, I would not direct the trial court to stay the remaining trial proceedings because claims remaining in the lawsuit would not involve disputes sent to arbitration. But given the Court's holding that the Alanizes are not required to arbitrate any claims with ML Trust and ML Life, I agree that the litigation must be stayed pending completion of the arbitration between the Alanizes and Medina because both the arbitration and the litigation will encompass claims based on Medina's actions. Accordingly, I also join the Court's opinion as to part IV.