Timothy SATRE, Appellant,

v.

Deborah DOMMERT, Appellee,

and

In re Timothy Satre.

Nos. 09–05–249 CV, 09–05–301 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Nov. 17, 2005.

Decided Jan. 26, 2006.

Gerald R. Flatten, Rienstra, Dowell & Flatten, Beaumont, for appellant/relator.

Wayne Reaud, The Reaud Law Firm, L. Dewayne Layfield, Law Office of L. De-Wayne Layfield, Beaumont, Johathan Craig Falls, The Falls Law firm, Austin, for appellee/real party in interest.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

PER CURIAM.

This mandamus proceeding and interlocutory appeal concern the applicability of arbitration provisions. We dismiss the interlocutory appeal and determine the trial court abused its discretion in denying the relator's motion to compel arbitration.

### Background

Over a period of approximately eighteen months, Deborah Dommert established five accounts with Raymond James & Associates, Inc., a member of the New York Stock Exchange. Timothy Satre, a certified financial planner and authorized representative of Raymond James Financial Services, opened the accounts for Dommert. Dommert and Satre both signed all of the new account forms. Alleging that the management of her accounts caused her to suffer financial losses, Deborah Dommert sued Raymond James Financial Services, Inc. ("RJFS"), Timothy Satre, Raymond James & Associates, Inc. ("RJA"), and Raymond James Financial, Inc., the parent corporation of RJFS and RJA.

Satre and each of the corporate defendants moved to compel arbitration of the entire dispute based upon the arbitration clause in the Client Agreement. On May 19, 2005, the trial court denied all of the defendants' motions to compel arbitration. Also, at the same hearing, and at Dommert's request, the trial court severed Dommert's claims against Satre from her claims against the corporate defendants, making Satre the sole defendant in Cause No. B–172,804–A.

On May 31, 2005, Dommert filed an amended petition against Satre and omitted the contention that Satre was an agent or employee of RJFS. On July 7, 2005, Satre timely filed a petition for writ of mandamus asserting that the trial court abused its discretion in denying his motion to compel arbitration.[1]

---

1. Satre also timely filed his notice of appeal from the trial court's order denying his motion to compel arbitration. The arbitration clause at issue expressly provides for arbitration in accordance with the United States Arbitration Act, and Dommert stipulated in her response to the petition for writ of mandamus that the federal Act applied. The in-

█ Mandamus relief is available to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate appellate remedy. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex.2002)(compelling arbitration when arbitration agreement applied to claims at issue and there were no defenses to enforcement of the agreement). Also, a trial court abuses its discretion if it erroneously applies the law to the facts, or if it errs in determining the law. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703 (Tex. 1998) (orig.proceeding). Under the Federal Arbitration Act ("FAA"), "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4 (1999). Thus, the FAA directs a trial court to refer the matter to arbitration if there is a valid agreement to arbitrate a dispute that falls within the scope of the arbitration agreement.

### The Arbitration Clause

Each of the five new account forms signed by Dommert stated that her accounts were subject to a "binding arbitration clause and other provisions substantially affecting [her] rights." Each of the new account forms incorporated by reference a document titled "Client Agreement" that contained an arbitration clause.

The parties dispute the applicability of the arbitration clause because after Dommert opened her initial account on May 11, 1998, she executed an agreement titled "Investment Management Service Agreement" ("IMSA"). The IMSA purports to be the entire agreement between Dommert and RJA. The IMSA does not contain an arbitration clause, and does not refer to the Client Agreement. Dommert asserts that the IMSA governs her relationship with Satre; while Satre, on the other hand, asserts the Client Agreement governs.

The Client Agreement, which was incorporated into the new account forms executed by Dommert and Satre on each of Dommert's five accounts, provides:

**Arbitration and Dispute Resolution:** (a) In a dispute or controversy, either arising in the future or in existence now, between me and you (including your officers, directors, employees or agents and the introducing broker, if applicable) we agree to first endeavor to settle the dispute in an amicable manner by mediation before the National Association of Securities Dealers, Inc. at the request of either party. Thereafter, any unsettled dispute or controversy will be resolved by arbitration conducted before the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., or the American Stock Exchange, Inc., or other self-regulatory organizations (SRO) subject to the jurisdiction of the Securities and Exchange Commission (SEC) pursuant to the arbitration rules of the Exchange or SRO, and in accor-

---

vestment advice that is the subject of this dispute involved the sale of securities; and, agreements that involve the sale of securities affect interstate commerce. *In re Whitfield*, 115 S.W.3d 753, 757 (Tex.App.-Beaumont 2003, orig. proceeding); *Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no

pet.). Accordingly, because we agree the federal Act applies, we dismiss Satre's interlocutory appeal as immaterial and consider his petition for mandamus. See *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69–70 (Tex.2005)(holding that because the arbitration agreement was governed by the federal Act and mandamus is available, appellant's interlocutory appeal under the state Act was "immaterial.").

dance with the United States Arbitration Act (Title 9 of the United States Code).

### Agreement to Arbitrate

 We must initially determine whether the parties to this appeal agreed to arbitrate their underlying dispute. *Safer v. Nelson Fin. Group, Inc.,* 422 F.3d 289, 293 (5th Cir.2005). A party moving to arbitrate a dispute must prove that a valid agreement to arbitrate exists, and that the dispute falls within the scope of the agreement. *Will–Drill Res., Inc. v. Samson Res. Co.,* 352 F.3d 211, 214 (5th Cir.2003); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). Thus, we examine the record to determine whether Satre met his burden under the FAA to show the existence of a valid agreement.

With respect to the agreements in question, the parties do not disagree that Dommert signed the new account forms. However, the parties disagree that the Client Agreements defined the relationship between Dommert and Satre, and disagree that Satre, individually, benefited from the arbitration agreement. Thus, the issues in this case are whether the current agreement of the parties includes a valid arbitration agreement, and whether Satre, who is not specifically named in the provisions of the various Client Agreements, is entitled to enforce them.

 We first examine the evidence regarding whether Dommert and Satre are bound by the arbitration provisions in the Client Agreements. On May 11, 1998, after meeting with Satre, Dommert established a financial relationship with RJA by opening two new accounts. One of these accounts was an individual account, and the other was an Individual Retirement Account. On both of the new account forms signed by Dommert to open these accounts, Dommert acknowledged: "I have received, read, understand, and agree to abide by all the terms and conditions set forth in the Client Agreement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. * * * I have detached and retained the Client Agreement for my records. * * *"

The Client Agreements applicable to all of the accounts also provided:

> I/we acknowledge and agree that my/our relationship with Raymond James & Associates, Inc. is governed by the provisions of this agreement. Throughout this agreement, "I", "me", "we" and "us" refer to the undersigned and any other actual or beneficial owner of property in this account. "You" and "your" refer to Raymond James & Associates, Inc. and the introducing broker, if applicable.

Dommert argues that based on this language in the Client Agreements, Satre is not a party to the Client Agreement.

By signing the new account form, Dommert acknowledged in writing her agreement to abide by all of the terms of the Client Agreement. At the hearing on the motion to compel arbitration, Dommert attempted to avoid the terms of the Client Agreement by introducing her affidavit in which she swore that "I did not receive or sign a Client Agreement. I never agreed to arbitrate my claims against the Defendants in this matter." The evidence at the hearing also included Dommert's deposition testimony in which she testified, under oath, that when she initially signed the new account forms she read all of their provisions, including the provision that she received and retained the Client Agreement. Dommert further testified that she was not tricked into signing the new account forms.

■ Dommert's argument that she did not receive or sign the Client Agreement itself is without merit. An unsigned document containing an arbitration clause, such as the unsigned client agreement in this case, may be incorporated by reference into another signed document. *Teal Const. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex.App.-Austin 2001, pet. denied). Also, a party's failure to read a portion of a contract's provisions is no defense to the enforcement of the contract's terms. In the case of *In re McKinney*, 167 S.W.3d 833, 835 (Tex.2005) (orig.proceeding), the Texas Supreme Court confirmed that "[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." We hold that the signed new account forms incorporated the unsigned arbitration provisions contained in the Client Agreements.

■ Next, we examine the arbitration clause in the Client Agreement to determine whether Satre was a party to it. Although not expressly named in the arbitration clause, the arbitration clause expressly extends to RJA's agents. Therefore, we examine the record for the evidence introduced at the hearing regarding whether Satre was an agent of RJA.

■ At the time of the hearing on May 19, 2005, Dommert's live pleading consisted of her Second Amended Petition, in which she asserted that Satre "did business as an authorized representative of RJA [Raymond James & Associates, Inc.]." Assertions of fact, not pleaded in the alternative, and contained in the live pleadings of a party to the suit are formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex.2001).

On May 31, 2005, Dommert subsequently amended her complaint after the Motion to Compel Arbitration hearing and dropped her allegation that Dommert was RJA's agent. Dommert's amended complaint was filed more than seven days after the hearing on the Motion to Compel Arbitration and after the trial court entered its order denying Satre's Motion to Compel Arbitration. Because Dommert's Second Amended Petition constituted the evidence considered by the trial judge at the time of the hearing on May 19, 2005, we disagree with Dommert's contention that Satre presented no evidence that he was a party to the arbitration agreement. Based on Dommert's admission in her pleadings, the evidence for purposes of the hearing conclusively proved that Satre was RJA's agent. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex.2000); *Mendoza v. Fidelity and Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

In summary, the record shows that: (1) the terms of the Client Agreements were by law incorporated by reference into the new account agreements' terms; (2) Dommert signed the new account agreements and was notified that they incorporated an arbitration provision; (3) Dommert's live pleading on file at the time of the hearing consisting of her Second Amended Petition established that Satre was RJA's agent; and (4) the arbitration clause in question extends to Satre as RJA's agent. Therefore, we find that Satre made a prima facie case that Dommert and Satre initially entered into an arbitration agreement under the FAA.

■ But, resolving these issues does not resolve the matter entirely. The continued validity of the arbitration clauses in the Client Agreements also depends upon whether the terms of the Client Agreements were superseded by the terms con-

tained in the Investment Management Service Agreement ("IMSA"). Dommert argues that the IMSA agreement's entireties clause operates to allow the IMSA to supersede all Client Agreements, whether made before or after the date the IMSA was signed. On the other hand, Satre argues that he was not expressly named as a party to the IMSA, and thus contends that he is entitled to enforce the arbitration clause in the Client Agreement.

On the same date that Dommert opened the initial two accounts, and subsequent to signing the two new account forms for those two accounts, Dommert executed the IMSA. The IMSA contains no arbitration clause, and contains a modification clause that states:

**Modification.**

This Agreement cannot be modified unless the modification is in writing and is signed by your President, Treasurer, or Corporate Counsel. I understand that this written document represents the entire Agreement between you and me, and that any previous or oral representations or promises, if not contained in this Agreement, are of no effect.

By executing the IMSA, Dommert appointed RJA as her attorney-in-fact, and gave it discretion to make investments without her advance consent. In the top right hand corner, the IMSA document references the account number established for the individual account that Dommert opened on May 11, 1998. The IMSA does not expressly reference the account numbers on Dommert's Individual Retirement Account or other accounts.

 Whether one contract executed in a series of contracts is intended by the parties to become the sole agreement presents a question under the merger doctrine. Generally, when a written agreement is fully integrated, the parol evidence rule precludes the enforcement of inconsistent prior or contemporaneous agreements. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958). "Merger, with respect to the law of contracts, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties." *Smith v. Smith,* 794 S.W.2d 823, 827–828 (Tex.App.-Dallas, 1990, no writ). "An integration clause is in essence the merger doctrine memorialized." *Id.* at 828.

The IMSA expressly provides that it is "between Investment Advisory Services (hereinafter referred to as 'IAS'), a Division of Raymond James & Associates, Inc. and Deborah A. Dommert (hereinafter referred to as 'Client'), who has appointed IAS to perform the investment services described below in accordance with the terms and conditions of this Agreement." Unlike the Client Agreement, there is no language extending the terms of the IMSA to RJA's agents.

Dommert expressly states in her brief that Satre is not a party to the IMSA. Satre also states in his brief that he is not a party to the IMSA. Finally, the testimony before the court on whether Satre was a party to the IMSA consisted of the deposition testimony of Paul Matecki, the Senior Vice President of Raymond James Financial, Inc., which is the parent corporation of RJA. Matecki testified that Satre was not a party to the IMSA.

On this record, the documents and testimony are consistent and are not contradicted. We therefore accept as a fact that Satre was not a party to the IMSA. Tex. R.App. P. 38.1(f). Also, under the facts before the trial court, the evidence was conclusive that Satre was a party to the Client Agreements, but was not a party to the IMSA.

■ Before the merger doctrine applies to a contract, the later contract must be between the same parties. *Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 612 (5th Cir.2000); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898–99 (Tex.App.-Fort Worth 1997, writ denied)(agreements between different parties cannot merge). Here, the parties are not identical because Satre is not a party to the IMSA. As a result, the merger doctrine does not apply with respect to Satre's contractual rights because Satre was not a party to both contracts at issue. We hold that Satre met his burden of showing a valid arbitration agreement existed with Dommert.

■ Although Dommert does not argue that the arbitration clauses in the Client Agreements do not reach the complaints she makes in her suit against Satre, Satre also bore the burden of showing that Dommert's claims fall within the scope of the arbitration agreement. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996). Dommert's complaints against Satre relate to Satre's representations of his skill as a money manager, his promise to personally and professionally manage her assets, his recommendation to her of an outside manager in which she placed a large percentage of her assets, his alleged failure to adequately disclose his financial arrangement with this outside manager, his subsequent alleged failure to manage Dommert's assets "in the face of the worst stock market in recent history," and his execution of trades in her account in disregard of her instructions not to sell certain of her stock holdings. Dommert's legal theories included claims against Satre for breach of fiduciary duties, breach of contract, fraud, misapplication of fiduciary property, accounting, violations of the Texas Deceptive Trade Practices Act, and commercial bribery.

It is clear that the Client Agreement contemplated the purchase and sale of securities. The arbitration clause indicates that it applies to "any unsettled dispute or controversy."

All of Dommert's claims against Satre concern Satre's representations in convincing her to hire him as her investment adviser and his subsequent actions in managing her accounts. The Fifth Circuit held that a similar arbitration clause was sufficiently broad to require the arbitration of several investors claims against their financial advisers for: (1) inappropriate investments; (2) misrepresentation; (3) breach of fiduciary duty; (4) violation of federal securities law; and (5) negligence. *Safer*, 422 F.3d 289 at 293. The Texas Supreme Court has likewise enforced broad arbitration clauses to require arbitration for the types of claims that are alleged against Satre. See *In re McKinney*, 167 S.W.3d at 834 (alleging claims for breach of contract, fraud, breach of fiduciary duty, and other claims for mishandling and loss of investments in his account); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001)(alleging claims for breach of contract, revocation of acceptance, breach of warranty, negligence, fraud, violations of the Deceptive Trade Practices Act, Fair Debt Collection Practices Act, Equal Credit Opportunity Act and Fair Credit Reporting Act, and injunctive relief); and *Cantella*, 924 S.W.2d at 944 (alleging claims for fraud, Texas Securities Act violations, negligence and gross negligence). We likewise hold that the claims asserted by Dommert fall within the scope of the Client Agreements' arbitration clauses.

### Conclusion

Both Satre and Dommert signed a contract incorporating an arbitration clause by reference. The arbitration provision

was not superseded by subsequent agreements. Accordingly, we hold the trial court abused its discretion in denying Satre's motion to compel arbitration. We conditionally grant the writ of mandamus and order the trial court to vacate its order denying Satre's motion to compel arbitration, and to enter a new order compelling arbitration of all of Dommert's claims against Satre. We are confident the trial court will comply, and our writ will issue only if it does not. We further dismiss Satre's interlocutory appeal.

DISMISSED IN PART; WRIT CONDITIONALLY GRANTED.