**AFFIRMED in part; REVERSE and REMAND in part; and Opinion Filed July 14, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00985-CV**

**CHRISTOPHER J. ASHBY, SCOTT W. BEYNON, JORDAN S. NELSON, AND FIRST AMERICAN TITLE INSURANCE COMPANY, Appellants**
**V.**
**ANNE D. KERN, J&J REAL ESTATE INVESTMENTS, LLC, TOWN AND CAMPUS, INC., CRAIG A. COUSINS, TRUSTEE OF THE CRAIG A. COUSINS TRUST, KENT SEYMOUR, TRUSTEE OF THE KENT S. SEYMOUR AND DONNA G. SEYMOUR FAMILY TRUST, BRUCE ROSE, TRUSTEE OF THE ROSE FAMILY TRUST, JOHN T. BARNETT, PATRICIA A. BARNETT, CYNTHIA A. WOLZ, ELDRIDGE HOLDINGS TOO, LLC, XENOCORP, LLC, Appellees**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04983-2019**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Reichek and Carlyle
Opinion by Justice Reichek

Christopher J. Ashby, Scott W. Beynon, Jordan S. Nelson, and First American

Title Insurance Company ("First American") appeal from the trial court's orders

denying their motions to compel arbitration. In a single issue, Ashby, Beynon, and

Jordan (collectively the "Rockwell Individual Defendants") contend the trial court

erred in not compelling arbitration pursuant to the arbitration provision contained in

the purchase and sale agreements at issue in this case. First American separately contends that appellees should have been compelled to arbitrate their claims against it pursuant to either the arbitration provision contained in the purchase and sale agreements, or the arbitration provision found in the title policies issued in connection with the subject sales. For the reasons discussed below, we reverse the trial court's order denying the Rockwell Individual Defendants' motion to compel arbitration and remand with instructions to enter an order compelling arbitration of the claims against those defendants. We affirm the trial court's order denying First American's motion to compel.

## Background

In their original petition, appellees Anne D. Kern[1], J&J Real Estate Investments, Inc., Town and Campus, Inc., Craig A. Cousins, Trustee of the Craig A. Cousins Trust, Kent Seymour, Trustee of the Kent S. Seymour and Donna G. Seymour Family Trust, Bruce Rose, trustee of the Rose Family Trust, John T. Barnett, Patricia Barnett, Cynthia A. Wolz, Eldridge Holdings TOO, LLC, and Xenocorp, LLC asserted that appellants were part of a "nation-wide scheme to fraudulently induce investors into purchasing unregistered securities in real property." Appellees claimed that, pursuant to this scheme, they were persuaded to invest in a commercial property in Plano, Texas that was leased to a company called

---

[1] Although Kern is listed as a party to this appeal, the record indicates she filed a "Notice of Nonsuit of Claims Without Prejudice" on March 30, 2020.

–2–

Noah Corporation. The investment was documented by (1) a Purchase and Sale Agreement ("PSA"), (2) a tenancy-in-common agreement, (3) a property management agreement, and (4) a lease with Noah. The PSAs identified Rockwell Debt-Free Properties, Inc. ("RDFP") as the seller and Ashby signed all of the PSAs on behalf of RDFP. The PSAs were also signed by each of the appellees as purchasers. First American created the title commitments and title policies for each of the purchases.

Appellees alleged that RDFP and a related company, Rockwell TIC, Inc. (collectively "Rockwell"), failed to disclose their substantial financial interest in Noah and the fact that Noah was in severe financial distress. Appellees further alleged that Rockwell, its principals, and First American failed to disclose that Noah was delinquent in its payment of taxes on the subject property and unable to service its lease commitment. According to appellees, Rockwell consistently used First American to do the title work for its transactions to give the sales a "stamp of legitimacy." Appellees asserted claims against numerous defendants including First American, Rockwell, and various principals of Rockwell for securities violations, violations of the Texas Business and Commerce Code, fraud, breach of contract, fraudulent transfer, aiding and abetting, and conspiracy. Among the principals named as defendants were Ashby, who served as RDFP's president and chief executive officer, Beynon, who was RDFP's executive vice president of real estate, and Nelson, who was RDFP's director of operations.

Rockwell and the Rockwell Individual Defendants filed a motion to compel arbitration based on an arbitration provision in the PSAs.  The provision states that "[a]ny dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association . . . ."  They contended that all of appellees' claims arose out of and were related to the PSA and, accordingly, arbitration was required.  Although the Rockwell Individual Defendants were not signatories to the PSA, they argued that equitable estoppel allowed non-signatories to compel arbitration where the claims against them "raise allegations of substantially interdependent and concerted misconduct" with the signatory party.

First American also filed a motion to compel arbitration relying on an arbitration provision in the title policies issued in connection with the sales.  The title policy arbitration provision stated,

> Either [First American] or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons.  Arbitrable matters may include, but are not limited to, any controversy or claim between [First American] and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either [First American] or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both [First American] and the

Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

First American conceded that, under the terms of the arbitration provision, Kern, Wolz, and the Barnetts could not be compelled to arbitrate because they were individuals rather than entities, and the cumulative amount of the Barnetts' insurance exceeded $2 million. But First American argued these individuals should be compelled to arbitrate along with the other parties "in the interest of judicial economy."

Appellees responded to Rockwell and the Rockwell Individual Defendants' motion contending (1) appellees' claims did not "arise from the PSA," (2) equitable estoppel based on "substantially interconnected and concerted misconduct" was not a recognized basis for non-signatories to enforce an arbitration provision, and (3) the PSA contained a "fraud exception" to the arbitration provision. In response to First American's motion, appellees argued the company failed to provide evidence that it complied with a Texas Department of Insurance ("TDI") rule requiring it to give its insureds notice and an opportunity to opt out of the arbitration provision before issuing the title policies.

Rockwell and the Rockwell Individual Defendants filed a reply brief in which they contended the claims made against them fell clearly within the broad scope of the arbitration provision, and the "fraud exception" in the PSA was a limitation on liability that had no bearing on what claims must be arbitrated. The individual

defendants further contended that their assertion of equitable estoppel based on allegations of concerted misconduct must be viewed in conjunction with other legal and equitable principles such as agency, intertwined claims, and third-party beneficiary status.

First American filed both a reply brief and a "joinder motion" to join the Rockwell motion to compel arbitration under the PSA. In its joinder motion, First American argued that, like the Rockwell Individual Defendants, it could enforce the arbitration clause in the PSA on the basis of estoppel and intertwined claims.[2]

The trial court denied the motions to compel arbitration and this interlocutory appeal followed. During the pendency of the appeal, Rockwell filed for bankruptcy protection resulting in the appeal being abated. Appellees then moved to sever the non-bankrupt parties and reinstate the appeal. This Court granted appellees' motion and severed the Rockwell Individual Defendants and First American into this appeal. We address the issues pertaining to those parties accordingly.

---

[2] Appellees moved to strike both the reply briefs and First American's joinder motion arguing they improperly included new arguments and evidence. The trial court denied appellees' request.

**Analysis**

**I. Rockwell Individual Defendants**

**A. Scope of the PSA Arbitration Provision**

We begin by addressing whether the trial court properly denied the motion to compel arbitration brought by the Rockwell Individual Defendants. We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence, but review the court's legal determinations de novo. *Id*. Whether the claims asserted fall within the scope of a valid arbitration agreement is a question of law we review de novo. *Id*.

Both Texas policy and federal policy strongly favor arbitration, and we resolve any doubts about the scope of an arbitration agreement in favor of arbitration. *See id*. "The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.*'" *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). The scope of an arbitration clause that includes all disputes, and not just claims, is very broad and encompasses more than claims based solely on rights originating from the contract. *Henry*, 551 S.W.3d at 115.

–7–

The arbitration provision in the PSA states that "[a]ny dispute between the parties will be submitted to binding arbitration . . . ." Arbitration provisions that use terms such as "any dispute" are capable of expansive reach and create a presumption of arbitrability. *Barantas Inc. v. Enter. Fin. Grp. Inc.*, No. 05-17-00896-CV, 2018 WL 3738089, at *7, (Tex. App.—Dallas Aug. 7, 2018, no pet.) (mem. op.). The scope of such a broad clause is not limited to claims that literally arise under the contract's terms, but includes any claims that "touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract." *Id*. Unless the arbitration agreement expressly excludes claims from arbitration, only "the most forceful evidence of a purpose to exclude the claims" from the broad scope of the agreement will prevent the claims from being arbitrated. *Id*.

Here, appellees contend the PSA expressly excludes fraud claims from those claims that must be arbitrated. In making this argument, appellees rely on an "As Is" Condition provision in the PSA in which appellees acknowledged they were buying the interest in the property "as is" and not relying on representations or warranties made by RDFP. The provision goes on to state,

> Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director, member or trustee of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. *Accordingly, except in the case of fraud,*

> *no law suit or cause of action shall ever be commenced, filed, or prosecuted by Buyer* against Seller or any employee, agent, officer, director, member or trustee of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the Lease from and after the Closing Date, other than liability arising from Seller's fraud.

(Emphasis added). Appellees argue that, because the "as is" provision specifically allows a "lawsuit" or "cause of action" for fraud, it necessarily excludes fraud from the scope of claims that must be arbitrated. We do not find appellees' reading of the "as is" provision persuasive.

The "as is" provision is a contractual limitation on liability, not a limitation on arbitrability. Appellees construction of the provision is based on their assertion that a "lawsuit" and "cause of action" can only be brought in a court of law. Therefore, according to appellees, the provision must be construed to mean that fraud claims may be brought in court and are not required to be arbitrated. But we construe language in a contract according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 747 (Tex. 2020). Courts routinely refer to claims subject to arbitration as "causes of action." *See e.g., TCP Holdings, L.L.C. v. Kirk*, No. 05-99-01945-CV, 2000 WL 1240202, at *4 (Tex. App.—Dallas Aug. 31, 2000, no pet.) (discussing whether ancillary causes of action are subject to arbitration with other arbitrable causes of action). Given the common usage of the term "cause of

–9–

action" when referring to claims in general, including those subject to arbitration, the language relied upon by appellees in the "as is" provision does not amount to the type of "forceful evidence of a purpose to exclude" necessary to remove fraud claims from the broad scope of the arbitration provision at issue. *See Athas Health, LLC v. Trevithick*, No. 05-16-00219-CV, 2017 WL 655926, at *4-5, (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.).

Appellees additionally point to an attorney's fees provision in the PSA that states,

> If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorney's fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

Appellees argue this provision shows the parties "contemplated litigating fraud claims in court." The attorney's fees provision addresses litigation of contract claims, however, not fraud claims. And while this provision presupposes that contract claims could be litigated in court, it neither requires such claims be determined through litigation, nor exempts them from the application of the broad arbitration provision.[3] We cannot say that this provision unambiguously negates or limits the arbitration provision, as it must, for the arbitration provision to not apply to appellees' claims. *See Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 395

---

[3] The possibility of litigating contract claims in court is not inconsistent with an arbitration provision covering "any dispute" as parties may waive their right to have a dispute resolved through arbitration.

–10–

(Tex. App.—Houston [14th Dist.] 2014, no pet.). Accordingly, we conclude the claims brought by appellees fall within the scope of the PSA's arbitration provision.[4]

**B. Enforcement of Arbitration Provision under Agency Theory**

In the alternative, appellees contend the Rockwell Individual Defendants cannot enforce the arbitration provision because they are not signatories of the PSAs. Generally, an arbitration provision may not be invoked by a non-party to the contract. *Barantas*, 2018 WL 3738089, at *8. However, a party that has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties if required by principles of contract law and agency. *Id*.

When contracting parties agree to arbitrate all disputes between them, they generally intend to include disputes about the actions of their agents, including allegations that the agents engaged in intentional torts. *See In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006). Corporations and other business entities can only act through their individual agents and, as a result, "many business related torts can be brought against either a corporation or its employees." *Id*. (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007)). Parties to an arbitration agreement cannot avoid arbitration simply by naming individual agents of the corporate party as defendants and suing them in their individual capacities.

---

[4] In the trial court, appellees referred to the PSA as being "fraudulently procured." It is well settled that an allegation of fraud relating to the entire contract, rather than the arbitration provision specifically, is not a defense to enforcement of the arbitration provision. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

*Merrill Lynch*, 235 S.W.3d at 188.  When all the agents' allegedly wrongful acts relate to their conduct as agents of the signatory company, the scope of an arbitration agreement may be extended to the claims against the agents.  *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009, orig. proceeding); *see also Merrill Lynch*, 235 S.W.3d at 190; *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 716-17 (Tex. App.—Dallas 2014, pet. denied).

The "Factual Background" portion of appellees' petition characterized the Rockwell Individual Defendants as part of "The Rockwell Control Group: Scheme Masterminds."  Appellees alleged that,

> As officers and directors of Rockwell, each member of the Rockwell Control Group was intimately familiar with Rockwell's operations, its representations to investors, and relationships with the other Defendants.  Indeed, the Rockwell Control Group knowingly developed, implemented, and oversaw Rockwell's strategic objective: maximize profits from the fraudulent sale of unregistered real estate and lease-backed securities to investors.  Members of the Rockwell Control Group made misrepresentations on which investors, including Plaintiffs, detrimentally relied.

Appellees further alleged the Rockwell Individual Defendants had "the power to directly or indirectly influence and control" Rockwell's activities and could be held liable with Rockwell for violations of the Texas Securities Act and the Texas Business and Commerce Code.  Appellees asserted that Ashby "personally solicited the investments of many of the Plaintiffs in this case."

–12–

Attached and incorporated into appellees' petition was a copy of one of the PSAs signed by Ashby on behalf of RDFP and information and excerpts from Rockwell's website profiling each of the individual defendants. According to appellees, the Rockwell website set forth the following information about Ashby:

> Christopher Ashby is the incorporator, registered agent, and director of Rockwell Debts Free Properties, positions he has held since its formation. Ashby also serves as the President and Chief Executive Officer of Rockwell Debt Free Properties. Ashby is also an initial director of Rockwell TIC and serves as its current President. Ashby's role is described as "primarily responsible for creating and managing all relations with clients, and potential clients, as well as establishing strategic relationships with referral partners and other industry professionals." Ashby reportedly "participates in all decisions related to property acquisitions."

The website information for Nelson purportedly stated,

> Jordan Nelson is the Director of Operations for Rockwell Debt Free Properties. He is one of the company's founding partners, and has served in his current role since the company's formation. Nelson is also the current registered agent for and a director of Rockwell TIC. . . . Nelson "leads all aspects of customer service and support and business support within the company." Nelson also "coordinates all the logistical elements involved in the purchase and sale of Rockwell Debit [sic] Free Properties."

And with respect to Beynon, appellees alleged the website stated,

> Scott W. Beynon is the Executive Vice President of Real Estate for Rockwell Debt Free Properties, is a founding partner, and has been since the company's formation. Beynon is also current director of Rockwell TIC. Beynon "is responsible for overseeing the process of research and analysis conducted in conjunction with the acquisition of new properties." Beynon "gathers and packages all pertinent due diligence information relative to each property offering so that potential buyers can conduct a thorough review of all aspects of the real estate purchase."

The above allegations contained in appellees' petition, along with the evidence they submitted in support of those allegations, are sufficient to show an agency relationship between RDFP and the Rockwell Individual Defendants for purposes of compelling arbitration.[5] Appellees' claims against the individual defendants are all based on work they allegedly performed on behalf of Rockwell. Indeed, the liability of the Rockwell Individual Defendants for the securities violations alleged by appellees is dependent upon RDFP's liability. *See Darocy v. Abildtrup*, 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011, no pet.) (control person liability derivative of primary violator liability). Appellees' allegations regarding the individual defendants' control over Rockwell, and the actions they purportedly took on behalf of RDFP in connection with the transactions at issue, constituted judicial admissions of facts demonstrating an agency relationship. *See Satre*, 184 S.W. 3d at 898; *see also Houston First Am. Savs. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of

---

[5] Appellees contend the Rockwell Individual Defendants waived the argument that their pleadings established agency for the purpose of compelling arbitration by not raising the issue in the trial court. The record shows, however, that the Rockwell Individual Defendants specifically relied on appellees' pleadings in making their agency argument below. Furthermore, in responding to appellees' contention in the trial court that they failed to produce any evidence of agency, the individual defendants responded that appellees were being "disingenuous in light of the admissions made in the pleadings." The Rockwell Individual Defendants argued that "[a]ll of the claims being brought against the Non-Signatory Defendants arise out of the Non-Signatories relationship and involvement with RDFP" and appellees' "own pleadings establish the [individual defendants'] 'close relationship with the Signatory' and the intimate and intertwined relationship between the claims against the Signatory and Non-Signatory movants." These arguments informed the trial court that the Rockwell Individual Defendants were relying on appellees' pleadings to support their motion to compel arbitration. *See Satre v. Dommert*, 184 S.W.3d 893, 898 (Tex. App.—Beaumont, no pet.) (petition constituted evidence upon which non-signatory party could rely to show agency for purposes of motion to compel arbitration).

a party are regarded as formal judicial admissions."). The fact that Ashby signed the PSAs on behalf of RDFP, by itself, evidences an agency relationship between him and the company. *See Cobra Acquisitions LLC v. AL Global Servs., LLC*, No. 04-19-00410-CV, 2020 WL 1931599, at \*5 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (mem. op.). Because the record before the trial court demonstrated the Rockwell Individual Defendants were entitled to compel arbitration of the claims against them as agents of RDFP, we conclude the trial court erred in denying their motion to compel. We resolve the Rockwell Individual Defendants' sole issue in their favor.

## II. First American

### A. Title Policy Arbitration Provision

In its first issue, First American contends the trial court erred in denying its motion to compel arbitration pursuant to the arbitration provision found in the title polices issued to appellees. Appellees respond that First American failed to prove an agreement to arbitrate because the evidence does not show the company complied with a TDI requirement that they be given an opportunity to opt out of the arbitration provision before the title policy issued.

Procedural Rule 36 of the Title Insurance Basic Manual states that a title insurance company "shall notify" its proposed insured of its right to delete the arbitration provision from the policy at no additional charge. TITLE INSURANCE BASIC MANUAL (2021), https://www.tdi.texas.gov/title/titlem4g.html. If the insured

requests deletion of the provision before the policy issues, the company must delete it. *Id.* If the company does not issue a title commitment informing the insured of its right to delete the provision before the policy issues, it must either provide the insured with a separate "Deletion of Arbitration" form before the issuing the policy, or it must delete the arbitration provision from the policy. *Id.*; s*ee also Alamo Title Ins. of Tex. v. First Valley Bank*, No. 13-98-256-CV, 1998 WL 35277608, at *4 (Tex. App.—Corpus Christi Dec. 3, 1998, no pet.) (discussing mandatory nature of current version of rule 36).

Appellees assert that First American failed to prove a binding arbitration agreement because it provided no evidence appellees were given the required notice of their right to request deletion of the arbitration provision before the title policies issued. As evidence that it provided the required notice, First American submitted copies of the title commitments it created for appellees' policies. Each of the commitments included a "Deletion of Arbitration Provision" form stating "[i]f you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued." But First American provided no evidence it transmitted the title commitments containing the deletion form to appellees.

The only evidence First American submitted to show that appellees received the title commitments was an email chain with Wolz in which her title commitment was referenced. Although the emails may suggest Wolz received her title

–16–

commitment, this evidence does not show that any of the other appellees received theirs. Furthermore, as noted above, First American has conceded that Wolz could not be compelled to arbitrate under the arbitration provision in the title policy because she is an individual rather than an entity. Therefore, there would be no reason for Wolz to request the arbitration provision be deleted.

In addition to not providing evidence that the title commitments were transmitted to appellees before the policies issued, First American's own evidence indicates the majority of the title commitments did not issue until after the policies issued. Seven of the ten title commitments submitted into evidence by First American have an issuance date after the date of the corresponding title policy. Of the remaining three title commitments, one pertained to the policy for Kern who, like Wolz, is an individual and would have no reason to request deletion of the arbitration provision.

On appeal, First American contends the issuance dates on the title commitments they submitted are "unreliable" and do not necessarily prove that appellees did not receive the title commitments before the policies issued. Instead, First American argues, we should focus on appellees' petition, which the company characterizes as containing judicial admissions that appellees received and relied on the title commitments.

Appellees' petition makes two references to title commitments. The first reference generally states that Rockwell used First American to issue "an assembly

–17–

line of title insurance opinions and commitments," but does not indicate when or if appellees received any of the commitments. The second reference is made during a discussion of the PSA and states the "accompanying" title commitment failed to disclose certain unpaid taxes. Even assuming we can read the word "accompanying" as meaning both that the title commitment was transmitted to appellees, and that the document was transmitted at the same time as the PSA, this does not show that appellees received a title commitment containing a "Deletion of Arbitration" form before the title policy issued as required by rule 36. First American's own evidence indicates many of the appellees did not receive the deletion form before the policies issued. By providing evidence contrary to appellees' alleged judicial admissions, First American waived its right to rely on the alleged admissions. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (party waived right to rely on admission by eliciting contradictory evidence). At best, the evidence before the trial court was conflicting. A trial court does not abuse its discretion when its decision is based on conflicting evidence, some of which reasonably supports the decision. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 709 (Tex. App.—Dallas 2010, no pet.); *see also Stagg Restaurants, LLC v. Serra*, No. 04-18-00527-CV; 2019 WL 573957, at *3 (Tex. App.—San Antonio Feb. 13, 2019, no pet.) (mem. op.) (trial court did not abuse discretion in denying motion to compel arbitration based on conflicting evidence of whether plaintiff received notice of arbitration provision).

First American next contends that, even if it has not shown compliance with rule 36, a failure to comply does not necessarily mean the arbitration provision is not enforceable. To support this argument, First American points to the fact that rule 36 does not contain a penalty for failure to provide the required deletion notice. First American's argument is not well taken because the issue here is not a penalty, but whether the company met its burden to prove appellees agreed to arbitrate their claims against the company. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) (moving party must establish existence of valid and enforceable arbitration agreement). Arbitration is a matter of contract, and a party cannot be forced to arbitrate issues it has not specifically agreed to submit to arbitration. *Id*. at 631. Stated another way, arbitration is "a matter of consent, not coercion." *Id*. at 639.

The title policies do not bear appellees' signatures and nothing in the record shows appellees ever consented to the arbitration provision contained within them. Relying on *Alamo Title Insurance of Texas v. First Valley Bank*, First American suggests appellees could have requested the arbitration provision be deleted after the title policies issued. *See Alamo Title*, 1998 WL 35277608, at *4. But *Alamo Title* is distinguishable in at least two critical respects. First, *Alamo Title* was decided under the former version of rule 36 which did not require notice to the proposed insured of its right to delete the arbitration provision before the policy issued. *Id*. Under the current rule, notice of the right to delete the provision is mandatory and

–19–

the insured must make the deletion request before the policy issues. Second, the record in *Alamo Title* showed the insured received the title policy and executed an endorsement deleting a different provision. Based on those facts, the court concluded the insured had notice of the arbitration provision and the opportunity to request its deletion. *Id.* at *4 n.6. No similar evidence is contained in the record before us. Because First American failed to provide evidence that appellees consented to the arbitration provision in the title policy, we conclude the company failed to prove it could compel arbitration under that provision.[6] We resolve First American's first issue against it.

**B. PSA Arbitration Provision**

**1. Equitable Intertwined Claims Estoppel**

In the alternative, First American contends that it can compel arbitration of appellees' claims under the arbitration provision in the PSAs. Although it is undisputed that First American is neither a named party nor a signatory to the PSAs, it argues it is entitled to enforce the PSA arbitration provision under either the equitable doctrine of intertwined claims or direct benefits estoppel. Intertwined claims estoppel has been referenced by several Texas courts, but has never been

---

[6] First American also argues that, under the primary jurisdiction doctrine, the issue of whether there was a violation of rule 36 should have been presented in the first instance to the Texas Board of Insurance. This argument was not presented to the trial court below and is, therefore, waived. *See* TEX. R. APP. P. 33.1(a); *Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 245 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (unlike exclusive jurisdiction, primary jurisdiction is not jurisdictional and may be waived).

adopted by the Texas Supreme Court. *Jody James*, 547 S.W.3d at 639; *V3 Constr. Co., LLC v. Butler*, No.02-20-00171-CV, 2021 WL 519912, at \*9 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.). Even assuming intertwined claims estoppel exists in Texas, we conclude it would not apply in this case.

In some instances, intertwined claims estoppel may permit a non-signatory to compel arbitration when (1) the non-signatory has a close relationship with a signatory to the contract containing the arbitration provision, *and* (2) the claims are intimately founded on, and intertwined with, the underlying contract obligations. *Natgasoline LLC v. Refractory Constr. Servs., Co. LLC*, 566 S.W.3d 871, 888 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The doctrine has limited application, however, and does not apply "whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them." *Id*. (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2nd Cir.)). The relationship must be more than an "entangled business relationship." *Jody James*, 547 S.W.3d at 640. Typically, there must be some corporate affiliation between the signatory and the non-signatory parties. *See id.; Merrill Lynch*, 235 S.W.3d at 194.

Although appellees' petition asserted that First American conspired and jointly acted with Rockwell in furtherance of Rockwell's alleged scheme to defraud appellees, there is no allegation or evidence to show that Rockwell and First American are anything other than independent and distinct entities. *See Jody James*,

–21–

547 S.W.3d at 640; *Merrill Lynch*, 235 S.W.3d at 194 (allegation of conspiracy insufficient to allow non-signatory to compel arbitration). At most, appellees' petition may be read to allege an "entangled business relationship" between two separate companies controlled by entirely different people. Nothing in the language of the PSA arbitration provision would have led appellees to anticipate being forced to arbitrate their claims against First American. *See Jody James*, 547 S.W.3d at 640. Because the record does not demonstrate that Rockwell and First American were "closer than merely independent participants in a business transaction," we conclude the doctrine of intertwined claims estoppel would not apply and First American cannot enforce the arbitration provision in the PSA on that basis. *Id*.

## 2. Direct Benefits Estoppel

Finally, First American contends it can enforce the arbitration provision of the PSA under the doctrine of direct benefits estoppel. Direct benefits estoppel "precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of the agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory." *Id*. at 637. For direct benefits estoppel to apply, the liability of the non-signatory must arise solely from the contract or must be determined by reference to it. *Id*. It is not enough that the claims against the non-signatory refer or relate to the contract, or that they would not have arisen "but for" the contract's existence. *Id*. When the substance of the claims arise from general obligations imposed by state law,

including statutes, torts, and other common law duties, rather than from the contract, the non-signatory cannot use direct benefits estoppel to compel arbitration of those claims. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528 (Tex. 2015).

Although First American contends the PSA is "at the root of the entire litigation," appellees have not asserted a claim against First American for breach of any duty or obligation arising under the PSA. Instead, appellees have asserted claims against First American for various torts and statutory violations. While these claims bear some relationship to the PSA, the fact that the claims would not have arisen but for the existence of the PSA is not enough to establish direct benefits estoppel. *Id*. at 529. Accordingly, First American cannot rely on the arbitration provision contained in the PSAs to compel appellees to arbitrate their claims against the company. We resolve First American's second issue against it.

## Conclusion

Based on the foregoing, we conclude the trial court erred in denying the Rockwell Individual Defendants' motion to compel arbitration. We reverse the trial court's order denying that motion and remand with instructions to enter an order compelling arbitration of the claims asserted against the Rockwell Individual Defendants.

We affirm the trial court's order denying First American's motion to compel arbitration.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

200985F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER J. ASHBY,
SCOTT W. BEYNON, JORDAN S.
NELSON, AND FIRST AMERICAN
TITLE INSURANCE COMPANY,
Appellants

No. 05-20-00985-CV V.

ANNE D. KERN, J&J REAL
ESTATE INVESTMENTS, INC.,
TOWN AND CAMPUS, INC.,
CRAIG A. COUSINS, TRUSTEE
OF THE CRAIG A. COUSINS
TRUST, KENT SEYMOUR,
TRUSTEE OF THE KENT S.
SEYMOUR AND DONNA G.
SEYMOUR FAMILY TRUST,
BRUCE ROSE, TRUSTEE OF THE
ROSE FAMILY TRUST, JOHN T.
BARNETT, PATRICIA BARNETT,
CYNTHIA A. WOLZ, ELDRIDGE
HOLDINGS TOO, LLC, and
XENOCORP, LLC, Appellees

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-04983-
2019.
Opinion delivered by Justice
Reichek. Justices Schenck and
Carlyle participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the motion to compel arbitration filed by CHRISTOPHER J. ASHBY, SCOTT W. BEYNON, and JORDAN S. NELSON is **REVERSED** and

–25–

we **REMAND** with instructions to enter an order compelling arbitration of the claims asserted by ANNE D. KERN, J&J REAL ESTATE INVESTMENTS, INC., TOWN AND CAMPUS, INC., CRAIG A. COUSINS, TRUSTEE OF THE CRAIG A. COUSINS TRUST, KENT SEYMOUR, TRUSTEE OF THE KENT S. SEYMOUR AND DONNA G. SEYMOUR FAMILY TRUST, BRUCE ROSE, TRUSTEE OF THE ROSE FAMILY TRUST, JOHN T. BARNETT, PATRICIA BARNETT, CYNTHIA A. WOLZ, ELDRIDGE HOLDINGS TOO, LLC, and XENOCORP, LLC against those defendants. The trial court's order denying the motion to compel arbitration filed by FIRST AMERICAN TITLE INSURANCE COMPANY is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered July 14, 2021