**Vacated and Dismissed and Opinion Filed November 1, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00004-CV**
_____

**INFORMATION SERVICES GROUP, INC., Appellant**
**V.**
**MARIO VOLLBRACHT, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-13872**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Appellant Information Services Group, Inc. (ISG) appeals the trial court's

Order Denying Defendant Information Services Group, Inc.'s Special Appearance

(the Order). In three issues, ISG challenges the legal arguments and evidentiary basis

urged by appellee Mario Vollbracht to support the trial court's specific or general

jurisdiction over ISG in this case. We conclude the trial court lacked jurisdiction

over ISG. We vacate the trial court's Order, grant ISG's Special Appearance, and

dismiss Vollbracht's claims against ISG for lack of jurisdiction.

## BACKGROUND

Beginning in April 2016, Vollbracht was employed by Alsbridge, Inc., which is described in the record as a "global management consulting firm that helps companies enable their businesses and reduce costs by optimizing their service provider relationships." In December of that same year, Alsbridge terminated Vollbracht's employment and offered him a position as an independent contractor. Vollbracht accepted the position and—pursuant to the contract attached to both his amended petition and ISG's Special Appearance—he was to be paid by commission. The contract states that "[t]he commission percentage earned will vary based on the fee structure of the services sold," i.e. the commission amount was determined based upon whether his sales were "contingency based services" or "fixed fee and 'time and materials' based services." Vollbracht alleges in this lawsuit that he was not paid four commissions he was due pursuant to this contract, and he sued Alsbridge to recover those commissions.

Vollbracht also sued appellant ISG, a Delaware holding company headquartered in Connecticut, which had indirectly acquired Alsbridge through a stock purchase in December 2016.[1] ISG specially appeared, arguing that the Texas trial court lacked personal jurisdiction over it. The Special Appearance was

---

[1] According to the record, defendant Alsbridge Inc. is owned by Alsbridge Holdings, Inc. As a result of the stock purchase, Alsbridge Holdings, Inc. was acquired by ISG Information Services Group Americas, Inc., which is owned, in turn, by International Consulting Acquisition Corp.; that entity is owned by International Advisory Holding Corp., which is owned by appellant ISG.

supported by the Declaration of Richard L. Fogel, who is Vice President, Legal of ISG and General Counsel for Alsbridge. Fogel testified to the following concerning ISG's lack of contact with the state of Texas:

- ISG is a holding company incorporated in Delaware with its headquarters and principal place of business in Connecticut. ISG is affiliated with over forty legal entities.

- ISG has fewer than five employees, all of whom are located in Connecticut.

- ISG has no operations or employees in Texas.

- ISG and Alsbridge are not joint employers, nor are they engaged in any joint enterprise.

- ISG has no bank accounts in Texas, is not registered to do business in Texas, and owns no property in Texas. ISG does not file a state tax return in Texas and has no tax nexus in Texas.

- ISG and Alsbridge are separate and distinct entities. ISG and Alsbridge have separate headquarters, and observe separate corporate formalities.

- Alsbridge has its own structure and operations in Texas.

- ISG does not exercise control over Alsbridge greater than that normally associated with common ownership and directorship.

In response to the Special Appearance, Vollbracht offered his own declaration, which authenticated five exhibits related to Alsbridge's acquisition by ISG.[2] Vollbracht testified that "[His] employment with Alsbridge was converted to

---

[2] Vollbracht's exhibits are: (1) an Alsbridge internal memo to Alsbridge Managing Directors dated December 1, 2016; (2) an Alsbridge press release to all Alsbridge Team members dated December 1, 2016; (3) an ISG Press Release dated December 1, 2016; (4) an industry news article dated December 2, 2016 from HorsesForSources.com; and (5) a document from ISG and Alsbridge titled "Employee FAQs: Alsbridge Acquisition Announcement," dated December 1, 2016.

an independent contractor relationship as a result of the aforesaid combination of Alsbridge and ISG. This suit is for [his] claims arising out of the independent contractor relationship."[3] The legal arguments made in the Special Appearance and response are set out below.

The trial court denied ISG's special appearance, and this interlocutory appeal followed.

## THE SPECIAL APPEARANCE

Vollbracht invoked Texas's long arm jurisdiction by pleading that ISG does business in the state. The burden thus fell upon ISG to negate all potential bases for personal jurisdiction that Vollbracht asserted. *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, a trial court does not issue findings of fact and conclusions of law related to its special appearance ruling, all facts necessary to support the order and supported by the evidence are implied. *Id.*

---

[3] Vollbracht does not allege that he was wrongfully terminated by Alsbridge.

## Joint Enterprise

In its first issue, ISG contends that Vollbracht cannot rely upon a theory of joint enterprise to support a finding of personal jurisdiction in this case. After acknowledging that ISG is a foreign corporation with its headquarters in Connecticut, Vollbracht pleaded that:

> Defendant Information Services Group, Inc. is conducting business in Texas by means of a joint enterprise with Defendant Alsbridge so that ISG purposely established minimum contacts with the State of Texas, giving this court personal jurisdiction over ISG, and can therefore be served by substituted service on the Texas Secretary of State pursuant to TPRC §17.044.

Joint enterprise is a theory of tort liability whereby each party is responsible for the tortious act of the other. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (addressing allegedly negligent conduct of defendants).

Texas courts, however, have consistently refused to accept allegations of joint enterprise liability as a basis for personal jurisdiction over a nonresident defendant. *See, e.g.*, *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 486 (Tex. App.—Dallas 2010, pet. denied), overruled on other grounds by *Steward Health Care Sys. LLC v. Saidara*, No. 05-19-00274-CV, 2021 WL 3707995 (Tex. App.—Dallas Aug. 20, 2021, no pet. h.); *S.L.A. Studio Land, Inc. v. SRC Const., Inc.*, No. 14-10-01129-CV, 2011 WL 5118902, at *7 (Tex. App.—Houston [14th Dist.] Oct. 27, 2011, pet. denied) (mem. op.); *see also PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007) (rejecting a "single business enterprise" theory of jurisdiction over the nonresident business). Texas law "presumes that two separate

corporations are distinct entities." *PHC-Minden, L.P.*, 235 S.W.3d at 173. Vollbracht acknowledges that, as a general rule, contacts of a resident subsidiary cannot be attributed to its nonresident parent.

However, Vollbracht contends that the operations of ISG and Alsbridge are "so close that the operations can be deemed 'fused'" so that jurisdiction over ISG can be asserted based upon activities of Alsbridge. Our supreme court has spoken to this theory of "fusing" entities for jurisdictional purposes:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798–99 (Tex. 2002) (internal citations omitted). When a party attempts to disregard distinct corporate entities and to ascribe one corporation's actions to another, we assign the burden of proof to the party attempting to do so. *PHC-Minden, L.P.*, 235 S.W.3d at 173.

To satisfy this burden, Vollbracht points to a statement issued jointly by ISG and Alsbridge in the form of "Employee FAQs" following announcement of the acquisition. In response to the questions: "How do we plan to go to market? Will Alsbridge retain its business name?" the companies responded:

> Alsbridge is retiring its name and adopting the ISG brand from day one. We will also combine our online presence under a single website.

Vollbracht argues that because Alsbridge was retiring its name and because "[a]ll online business was going to be conducted over the ISG website," Alsbridge essentially ceased to exist. We disagree. The fact two related entities share a common name does not affect whether either has sufficient contacts with the forum for jurisdictional purposes. *Id.* at 175. Moreover, the record before us does not indicate that either defendant conducted business of any sort on this website or that potential clients could interact with either defendant on the site. A "passive" website, used only for advertising, is not sufficient to establish a significant contact by a nonresident. *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex. App.—Dallas 2003, pet. denied). The special appearance record does not establish that the ISG website was any more than a passive site.

Vollbracht has offered no evidence that ISG controls the internal business operations and affairs of Alsbridge to such an extent that the two entities should be "fused" for jurisdictional purposes. We conclude Vollbracht's joint enterprise argument, even if viewed as an alter ego argument in this case, cannot support personal jurisdiction over ISG. Accordingly, we sustain ISG's first issue.

**Specific Jurisdiction**

In its second issue, ISG challenges Vollbracht's contention that the trial court may exercise specific jurisdiction over ISG in this case. A trial court may exercise personal jurisdiction only when a nonresident defendant has established minimum contacts with the forum state and the court's exercise of jurisdiction would comport

–7–

with traditional notions of fair play and substantial justice. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Specific jurisdiction exists when the nonresident defendant's alleged liability arises from or is related to its activity conducted within the forum. *Id.* at 576. Thus, for a Texas court to exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with Texas must be purposeful, and the cause of action must arise from those contacts. *Old Republic*, 549 S.W.3d at 559. "[W]hen analyzing specific jurisdiction, we focus on the relationship between the forum, the defendant, and the litigation." *Id.*

*Purposeful Contacts Connected Substantially to Operative Facts*

ISG argues that it has negated the required minimum contacts for specific jurisdiction in this case because the evidence shows that Vollbracht's claims have no connection to any contact between ISG and Texas. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions*, 221 S.W.3d at 585. "Operative facts" are those that a trial would focus on to prove the liability of the nonresident defendant. *Kaye/Bassman Intern. Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.). In this case, Vollbracht has sued both defendants for failing to pay him commissions he allegedly was due under his contract. For our purposes, the operative facts in a trial of ISG would involve (1) the existence of a contractual

–8–

relationship between ISG and Vollbracht, (2) Vollbracht's performance under the contract, and (3) ISG's payment of, or failure to pay, any commissions due.

Fogel testified that Vollbracht has never been an employee of lSG and that lSG has never owed or paid Vollbracht commissions. He testified further, and Vollbracht has not disputed, that lSG was not a party to Vollbracht's agreement and has never had a contract with Vollbracht. Vollbracht has not offered evidence that ISG directed Alsbridge not to pay his commissions. And we have concluded above that he has not evidenced any control of Alsbridge by ISG that would support the law's treating them as a single entity so as to make ISG liable under Alsbridge's contract. Vollbracht has not offered evidence of any Texas contact by ISG that was directly related to his contract or to any unpaid commissions.[4]

Indeed, Vollbracht charges ISG with only one purposeful contact with Texas: its acquisition of Alsbridge. In this regard, Vollbracht relies upon the Texas Supreme Court's recent opinion in *Cornerstone Healthcare Group Holding, Inc. v. Nautic Management VI, L.P.*, 493 S.W.3d 65 (Tex. 2016). In that case, Cornerstone—which owns and operates hospitals in Texas and other states—sued a group of its former executives for usurping a corporate opportunity and a number of nonresident entities

---

[4] In his amended pleading, Vollbracht—when discussing one of his client transactions—stated: "The CEO of ISG (Todd LaVieri) himself even asked Plaintiff about it in the beginning of March 2017." Vollbracht repeats this allegation in his appellate brief with no more detail. Neither reference to the conversation alleges that the contact occurred in Texas, and we know from Vollbracht's declaration that he resides in Georgia. Moreover, Vollbracht's declaration does not address this purported contact in any fashion. We cannot consider it as a purposeful contact with the state of Texas.

for related torts. The executives had identified Reliant Hospital Partners, LLC, which owned a chain of inpatient rehabilitation facilities in Texas, as a possible takeover target. *Id.* at 67–68. But rather than bringing the Reliant prospect to Cornerstone's board, the executives approached a Rhode Island private-equity firm, Nautic Partners, LLC,[5] in an attempt to obtain funding for such a purchase with the understanding that the executives would control the purchased business. *Id.* at 68. In a complex series of transactions, three nonresident equity funds created a Texas entity to purchase Reliant.[6] *Id.* at 69. The executives then resigned from Cornerstone and took over operation of the Reliant businesses. *Id.*

Cornerstone sued its former executives, the Texas entity formed to purchase Reliant, the three funds that owned the purchasing entity, and Nautic Partners as

---

[5] The opinion describes Nautic Partners this way:

Nautic Partners is a management advisor that identifies and conducts due diligence on potential investments for several private-equity funds. The three funds at issue here—Nautic Partners VI, L.P., Reliant Splitter, L.P., and Kennedy Plaza Partners VI, L.P. (collectively, the Funds)—are Delaware limited partnerships with their principal places of business in Rhode Island. Nautic Management VI, L.P., also a Delaware limited partnership, is the general partner of two of the Funds and manager of the third.

493 S.W.3d at 68.

[6] According to the opinion, the defendants described the transactions as the following series of events:

[Nautic Partners] met in Rhode Island for presentations by Nautic Partners and the prospective Reliant management team (i.e., the Cornerstone executives) about the investment; the General Partner authorized the Funds to invest in Reliant Holding and issued a capital call (actions that also took place in Rhode Island); the Funds created Reliant Holding pursuant to that authorization; Reliant Holding formed Reliant Pledgor and Reliant Opco; Reliant Pledgor and Reliant Opco formed New Reliant; and New Reliant acquired the hospitals.

493 S.W.3d at 72. The court concluded, though, that "these events were all part of one overarching transaction that closed March 23, 2011." *Id.*

–10–

general partner of the funds. The funds and Nautic Partners filed special appearances. *Id.* The supreme court reasoned that the Reliant purchase did not result from the newly formed Texas purchaser's unilateral activity. Instead, the purchase "was the result of a transaction stemming from the activity of the respondents themselves." *Id.* at 73. The court concluded:

> [T]he respondents here specifically sought both a Texas seller and Texas assets. Accordingly, we hold that the respondents' contacts with Texas were "purposeful" and that the respondents sought "some benefit, advantage, or profit by availing [themselves] of the jurisdiction" such that they impliedly consented to suit here.

*Id.*

Vollbracht argues that because ISG acquired the Texas business of Alsbridge, our case should be governed by *Cornerstone*. Again, we disagree. While in both cases a nonresident entity acquired a Texas business, the claims raised in *Cornerstone* were substantially connected to that acquisition. Cornerstone sued its former executives for usurping a corporate opportunity and for misappropriating confidential information and breaching their fiduciary duties in the process. *See id.* at 69. It sued the various entities involved for tortious interference and for conspiring with the executive tortfeasors. *Id.* The supreme court concluded that all of those claims related directly to the purposeful acquisition of the Reliant hospitals. *See id.* at 74 ("Because the facts surrounding the Reliant transaction—which is the crux of the respondents' purposeful contact with Texas—will be the focus of the claims against the respondents at trial, we hold that those claims arise out of the

–11–

respondents' Texas contacts.") (footnote omitted). In Vollbracht's case, by contrast, none of his claims relate to ISG's acquisition of Alsbridge. He does not allege that the acquisition was wrongful in any way. Accordingly, *Cornerstone* does not support his argument for specific jurisdiction.

We conclude that the evidence in the Special Appearance record does not support a conclusion that ISG engaged in purposeful contacts with the state of Texas that bore any substantial connection to Vollbracht's litigation. Nor does that evidence support the implication of any facts showing such a connection. *See Old Republic*, 549 S.W.3d at 558 (allowing facts necessary to support the order to be implied when "supported by the evidence"). Therefore, Vollbracht's argument cannot support a conclusion—or an inference—that ISG is subject to the exercise of specific jurisdiction.

### *Texas Business & Commerce Code § 54.005*

Vollbracht also pleaded that "Defendant Information Services Group, Inc. can also be served and this court has jurisdiction, under Tex. Bus. & Comm. Code § 54.005." That statute provides:

> A principal who is not a resident of this state and who enters into a contract subject to this chapter is considered to be transacting business in this state for purposes of the exercise of personal jurisdiction over the principal.

TEX. BUS. & COM. CODE ANN. § 54.005. Chapter 54 applies to a written contract between a "principal" and a "sales representative." *Id.* § 54.002. Both of those

contractual-party references are defined terms. To be subject to the chapter as a principal, the contracting party must:

>   (A) manufacture[], produce[], import[], or distribute[] a product for sale;

>   (B) use[] a sales representative to solicit orders for the product; and

>   (C) compensate[] the sales representative wholly or partly by commission.

*Id.* § 54.001(2). A sales representative must be "an independent contractor who solicits, on behalf of a principal, orders for the purchase at wholesale of the principal's product." *Id.* § 54.001(3).

As a threshold matter, no party alleges that a contract exists between ISG—as the purported principal in Vollbracht's invocation of section 54.005—and Vollbracht. Instead, Vollbracht stresses that ISG and Alsbridge "describe their transaction as a combination of the two companies." He cites no authority that the acquisition of Alsbridge by ISG—regardless of the terminology used to describe it—could make ISG liable for Alsbridge's contractual obligations. Affiliated corporate entities generally exist "to separate the businesses, liabilities, and contracts of each." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (a contract with one corporation is generally not a contract with any other corporate affiliates). An exception to this rule exists in the case of alter egos, when two corporations are actually operated as one. *Id.* However, we have concluded that the record contains

no evidence that ISG and Alsbridge fall within such an exception. We conclude that no contractual relationship exists between ISG and Vollbracht.

Moreover, the special appearance record contains uncontroverted testimony from Fogel that ISG—the purported principal under section 54.005—"does not generate revenues and does not manufacture, produce, import, or distribute products for sale." In addition, for purposes of this Special Appearance, the record contains no evidence that Vollbracht sells any product. His brief contends he is a "vendor of software." But when his contract addresses compensation, it states, "The commission percentage earned will vary based on the fee structure of the *services* sold." (Emphasis added.) And in his response to the Special Appearance below, Vollbracht alleged that ISG "put *services* in the stream of commerce" knowing that some of them would reach Texas. (Emphasis added.) Following that allegation, Vollbracht cited three Texas Supreme Court cases, all of which specifically address placing a *product* in the stream of commerce. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac River Expeditions*, 221 S.W.3d at 576–77; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786 (Tex. 2005).

We conclude that Chapter 54 of the Business and Commerce Code does not apply to any relationship between ISG and Vollbracht. Thus, section 54.005 cannot provide a basis for the trial court to exercise specific jurisdiction over ISG.

ISG has negated each of Vollbracht's arguments that the trial court could properly exercise specific jurisdiction over ISG in this case. We sustain ISG's second issue.

**General Jurisdiction**

In its third issue, ISG argues that the trial court lacked general jurisdiction over ISG as well. A Texas court may exercise general jurisdiction over a nonresident defendant if that defendant's contacts with Texas are continuous and systematic. *Moki Mac River Expeditions*, 221 S.W.3d at 575. Those contacts must be so continuous and systematic, however, "as to render [the defendant] essentially at home in the forum State." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)).

Vollbracht's brief refers to general jurisdiction only once, concluding that "[o]nce the jurisdictional veil of ISG has been pierced by the fusion/combination of Alsbridge and ISG, ISG is also subject to both general and specific jurisdiction." At oral argument, however, counsel for Vollbracht confirmed that Vollbracht is not relying on a theory of general jurisdiction in this case. Our review of the evidence before the trial court leads us to agree that ISG is not essentially "at home" in Texas. *See id.* We sustain ISG's third issue.

## CONCLUSION

The trial court lacked personal jurisdiction over ISG. Accordingly, we vacate the trial court's Order, grant ISG's Special Appearance, and dismiss Vollbracht's claims against ISG for want of jurisdiction.

210004f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

INFORMATION SERVICES
GROUP, INC., Appellant

No. 05-21-00004-CV     V.

MARIO VOLLBRACHT, Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-13872.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Nowell participating.

In accordance with this Court's opinion of this date, the order of the trial court is **VACATED**, appellant Information Services Group, Inc.'s Special Appearance is **GRANTED**, and appellee Mario Vollbracht's claims against Information Services Group, Inc. are **DISMISSED** for want of jurisdiction.

It is **ORDERED** that appellant Information Services Group, Inc. recover its costs of this appeal from appellee Mario Vollbracht.

Judgment entered this 1st day of November, 2021.